James A. **CLARK** and Lori A. **Clark**, individually and as parents and natural guardians of Jina M. Clark, Plaintiffs,

v.

**MATSUSHITA ELECTRIC INDUSTRIAL COMPANY, LTD.**, Matsushita Electric Corporation of America, and DESA International, Defendants.

**Civ. A. No. 1:CV–92–0561.**

United States District Court, M.D. Pennsylvania.

Feb. 5, 1993.

---

James D. Greenberg, Katherman, Martz & Gailey, York, PA, for plaintiffs.

Eric A. Weiss, Edward J. McGinn, Jr., Liebert, Short & Hirshland, Philadelphia, PA, for defendants.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is the motion of defendant Matsushita Electric Industrial Company, Ltd. ("MEI") to dismiss it as a party in this case due to an alleged lack of personal jurisdiction. Also before the court is MEI's motion for reconsideration of this court's July 31, 1992 order. That order denied MEI's motion to dismiss for insufficiency of process and insufficiency of service of process. Discovery has taken place on the personal jurisdiction issue and briefs have been filed on all motions. Therefore, the motions are ripe for disposition.

*Background*

The captioned action arises out of personal injuries to Jina Clark, daughter of plaintiffs James and Lori Clark. The injuries were caused by a kerosene heater manufactured by MEI and distributed in the United States by DESA International ("DESA").[1]

Based on this accident, Plaintiffs filed three separate actions in the Court of Common Pleas of York County, Pennsylvania against DESA, MEI, and Matsushita Electric Company of America ("MECA"), respectively. All three actions were removed to this court and consolidated into the captioned action.

Defendant MEI is a corporation incorporated and doing business in Japan. (Memorandum of Law in Support of the Motion of [MEI] to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2), (4), and (6) ("MEI's Brief in Support") at 6.) Among the goods MEI manufactures are electronic products, including those marketed in the United States under the brand names Panasonic, Quasar, and

---

1. Plaintiffs have alleged, in the alternative, that the heater was manufactured or distributed by MECA. (Plaintiffs' Amended Complaint, ¶ 8.) However, Plaintiffs have presented no evidence to substantiate these alternative propositions.

Technics, and home appliances, including kerosene heaters such as the one at issue in this case. (Plaintiffs' Memorandum of Law in Opposition to the Motion of [MEI] to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Plaintiffs' Brief in Opposition"), Exhibit B at ¶ 9; MEI's Brief in Support at 6.) MEI engages in no direct marketing or sales of its goods in the Commonwealth of Pennsylvania. (Aff. of Yuki Miyazaki at ¶¶ 5–13; MEI's Brief in Support at 4, 6–7.) However, its subsidiaries, including MECA, do market MEI products in the United States. (Reply to Plaintiffs' Memorandum of Law in Opposition to the Motion of [MEI] to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("MEI's Reply") at 4–5.)

MECA, a wholly-owned subsidiary of MEI, is incorporated in Delaware and has its principal place of business in New Jersey. (MEI's Reply at 2.) MECA distributes various products manufactured by MEI, including Quasar, Panasonic, and Technics name-brands. (*Id.* at 4.) It has had a registered office in Pennsylvania since 1969.[2] (Plaintiffs' Brief in Opposition at 4.)

DESA is a Kentucky corporation and is the admitted distributor of the subject kerosene heater. (Answer of DESA International at ¶ 5; MEI's Reply at 2–3.)

Prior to the removal and consolidation of the other two actions into the captioned action, MEI filed a motion to dismiss alleging lack of personal jurisdiction over MEI and insufficiency of process and service of process with respect to MEI. This court deferred a decision on the personal jurisdiction issue pending limited discovery on the matter, but proceeded to address the service and process issues. In a memorandum dated July 31, 1992, this court found that service of process and the process itself were adequate and denied MEI's motion to dismiss on those grounds. MEI filed a motion for reconsideration of that order or, in the alternative, for an interlocutory appeal pursuant to 28 U.S.C. § 1292(d). Since the filing of the motion for reconsideration, discovery with respect to personal jurisdiction has been completed and briefs on the issue have been filed.

*Discussion*

I. Personal Jurisdiction

 A defendant bears the initial burden of raising lack of personal jurisdiction because it is a waivable defense under Federal Rule of Civil Procedure 12(h)(1). Once the defense is raised, however, the burden shifts to the plaintiff to prove that the exercise of jurisdiction is permissible. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *Allied Leather Corp. v. Altama Delta Corp.*, 785 F.Supp. 494, 497 (M.D.Pa. 1992) (*"Allied Leather"*); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1351, at 248 (1990). "The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence." *Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 805 (3d Cir.1981) (*"Lucas"*) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)).

The standard by which a court must judge a Rule 12(b)(2) motion differs from that governing analysis of a Rule 12(b)(6) motion. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir.1984) (*"Time Share Vacation Club"*); *Savin Corp. v. Heritage Copy Prod., Inc.*, 661 F.Supp. 463, 466 (M.D.Pa. 1987) (*"Savin"*). While a Rule 12(b)(6) motion requires a court to accept the allegations of the non-moving party as true, a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies." *Time Share Vacation Club*, 735 F.2d at 66 n. 9.

Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts

---

2. While MEI asserts that the evidence proffered in support of this assertion is not competent evidence, (MEI's Reply at 3), it has not denied the truth of the assertion; MEI merely claims that MEI's presence in Pennsylvania is unproven. (*Id.* at 3–4.)

through sworn affidavits or other competent evidence. Contrary to the dissent's suggestion, therefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Id.*

■ The United States Supreme Court and the Pennsylvania Supreme Court have recognized that "the analysis of whether a state may exercise jurisdiction over a nonresident individual must be tested against both statutory and constitutional standards." *Kenny v. Alexson Equip. Co.*, 495 Pa. 107, 432 A.2d 974, 980 (1981) (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Under Pennsylvania law, however, a court may exercise personal jurisdiction to the fullest extent allowed by the United States Constitution. 42 Pa.Cons.Stat.Ann. §§ 5308, 5322(b). Thus, in Pennsylvania the statutory assessment of jurisdiction collapses into the constitutional one.

Due process requires that the defendant have "minimum contacts" with the forum state such that maintenance of the action does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The due process clause of the Fourteenth Amendment limits the power of a state to exert personal jurisdiction over a nonresident defendant. The constitutional touchstone of the determination whether an exercise of personal jurisdiction comports with due process remains whether the defendant purposefully established 'minimum contacts' in the forum state.

*Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 108–109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quotations omitted) (plurality opinion). In order to satisfy the minimum contacts requirement, the court must be able to point to "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

There are two distinct bases for finding that a defendant is subject to personal jurisdiction.

If the plaintiff's cause of action arises out of a defendant's forum-related activities, that defendant may be subject to the state's jurisdiction under 'specific jurisdiction' so long as jurisdiction is authorized by a 'long-arm' statute and the defendant has sufficient minimum contacts with the state as defined by *International Shoe Co. v. Washington*, 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945). *See Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir.1982). If the claim is connected to a defendant's non-forum related activities, a defendant may be subject to the 'general' jurisdiction of the court so long as it has 'continuous and substantial' attachments with the forum state.

*Allied Leather*, 785 F.Supp. at 497. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

In this case, Plaintiffs have not specified whether they seek specific or general jurisdiction over Defendant MEI. Instead, Plaintiffs have made a blanket assertion that jurisdiction with respect to MEI is proper based on the contacts of MEI and its subsidiaries with the forum. Those alleged contacts are:

1) MECA has maintained a registered office in Philadelphia, Pennsylvania since 1969 and continues to do so. (Plaintiffs' Brief in Opposition at 4.)

2) MECA is a wholly owned subsidiary of MEI which sells Panasonic, Quasar, and Technics branded products. (*Id.*)

3) MEI has admitted that it sells products bearing the Panasonic, Quasar and Technics brand to MECA which subsequently distributes the products in the United States. Because MEI named no other distributors of such products, "the

clear inference ... is that MECA is the exclusive distributor of those brand names in the United States." (*Id.* at 4–5).

4) MEI has admitted that "we assume that products purchased from MEI were ultimately sold to consumers in the Commonwealth of Pennsylvania." (*Id.* at 5 (citing response to interrogatory 21).)

5) MEI has a "close nexus with MECA" and an "awareness of [MEI's] extensive American distribution network," as evidenced by the following facts:

1. The CEO of MECA, Akiya Imura, also serves on the Board of Directors of [MEI].

2. The Financial Highlights of [MEI's] 1992 Annual Report lump together [MEI] and all subsidiaries including MECA.

3. [MEI] maintains a Panasonic research lab in New Jersey which "spearheads [MEI's] research in developing technologies *for the U.S. market*" (emphasis added).

4. [MEI] is marketing flat screen televisions in North America.

5. Sales figures throughout the 1992 Annual Report are consistently reported in Japanese Yen and U.S. Dollars, including for home appliances (e.g., kerosene heaters), with increased sales.

6. [MEI] in 1990 acquired MCA, Inc., which includes Universal Studios, a major U.S. film producer.

(Plaintiffs' Brief in Opposition at 5–6 (citations omitted).)

Since Plaintiffs have not specified whether they seek general or specific jurisdiction and cite cases relating to both, the court will analyze the contacts noted under each theory.

**3.** MEI has not admitted that it manufactured the product in question, but it does not deny having done so. Throughout its arguments on this motion, MEI appears to assume responsibility as manufacturer of the product. Therefore, the court will deem MEI to have admitted manufacture of the product for purposes of this motion.

**4.** Plaintiffs' complaint does not state whether Plaintiffs or any other Pennsylvania resident purchased the heater in question:

## A. *Specific Jurisdiction*

Due process requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182.

> Where a forum seeks to assert jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant 'has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Id.* (citations omitted).

■ There is no evidence that the instant litigation arises out of MEI's alleged contacts with the forum. The litigation arises out of the manufacture and sale of a kerosene heater. While MEI does not dispute that it manufactured the subject heater,[3] recent United States Supreme Court rulings indicate that merely manufacturing a product and placing it in the stream of commerce is not a sufficient basis for the assertion of personal jurisdiction. *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032 (plurality opinion).

■ Plaintiffs have presented no evidence that MEI otherwise purposefully directed the kerosene heater at issue to Pennsylvania residents. Indeed, in this case, the subject heater was not even purchased in Pennsylvania, but, rather, in Maryland.[4] No evidence has been presented that *any* kerosene heater manufactured by MEI was ever sold in Pennsylvania or that a single Pennsylvania resident ever purchased an MEI-manufactured kerosene heater.

> 6. On or about December 24, 1983, a Comfort Glow Model GC19B, Serial Number 2P406081277, Kerosene Heater (hereinafter "product"), manufactured by Defendant [MEI] was purchased from Jim Foard's Western Auto Store in Jarrettsville, Maryland.
> 7. Plaintiffs later came into possession of heater, and were the ultimate users or consumers thereof.

(Plaintiffs' Complaint, ¶¶ 6–7.)

Thus, there is no basis for the assertion of specific jurisdiction over MEI in this case.

## B. *General Jurisdiction*

The standard for the assertion of general jurisdiction is much higher than that for the assertion of specific jurisdiction.

> In considering whether general jurisdiction over a defendant is present, the court looks to all a defendant's contacts with the forum state to determine whether the defendant's connection with the state is continuous and systematic. The general jurisdiction threshold, however, is much higher than that for specific jurisdiction, as the facts required to assert general jurisdiction must be "extensive and pervasive." The court should look to the nature and quality of business contacts the defendant has initiated with the forum: direct sales in the forum, maintenance of a sales force in the state, advertising targeted at the residents of the forum state, and the derivation of a significant slice of revenue from activity within the state.

*Allied Leather,* 785 F.Supp. at 497–98.

In the captioned case, Plaintiffs' argument for jurisdiction over MEI relies primarily on the Pennsylvania activities and contacts of its subsidiary, MECA. If proven, MECA's contacts with Pennsylvania, including a registered office in the state since 1969 and extensive marketing of Panasonic, Quasar, and Technics electronics goods undoubtedly subject *MECA* to jurisdiction in this state. However, *MECA* has not challenged personal jurisdiction in this case.

■ On the other hand, the acts or contacts of MECA, a corporate entity distinct from MEI, are not necessarily attributable to MEI. Mere ownership by a parent corporation of a subsidiary present in the forum state will not automatically subject the parent to personal jurisdiction in that forum.

> Generally, [a] foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in the state. Other factors which may have a bearing on the jurisdictional issue are whether the subsidiary corporation played any part in the transaction at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded.

*Savin,* 661 F.Supp. at 468 (citation omitted) (quoting *Lucas,* 666 F.2d at 805–06). A subsidiary is an "alter ego" of its parent corporation if domination and control by the parent renders the subsidiary its mere instrumentality. In that instance, the parent corporation may be subject to personal jurisdiction in the forum, since it is doing business within the state under the facade of the subsidiary. *Id.; Botwinick v. Credit Exch., Inc.,* 419 Pa. 65, 213 A.2d 349, 354 (1965).

The agency and alter ego inquiries center on control: "The significant factor in this inquiry is the degree of control that the [parent corporation] retains over the [subsidiary]." 2 James W. Moore et al., *Moore's Federal Practice* ¶ 4.41–1[6], at 4–368 (2d ed. 1992) (*"Moore's Federal Practice"*). However, there is no record evidence indicating a degree of control that would make MECA a mere agent or instrumentality of MEI.

■ First, for a subsidiary to be considered the alter ego of a parent corporation, "the degree of control exercised by the parent must be greater than normally would be associated with common ownership and directorship." *Savin,* 661 F.Supp. at 469 (quoting *Hargrove v. Fibreboard Corp.,* 710 F.2d 1154, 1160 (5th Cir.1983)). Absent a showing of such control, subsidiaries, even if wholly-owned, are presumed separate and distinct entities from their parent corporations. *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925); *Hargrove,* 710 F.2d at 1160. The mere ownership of a subsidiary, even one hundred percent ownership, is not sufficient to assert that a subsidiary is the alter ego or agent of its parent corporation. *Hargrove,* 710 F.2d at 1160; *Quarles v. Fuqua Indus., Inc.,* 504

**1068**

F.2d 1358, 1364 (10th Cir.1974); *Croyle v. Texas E. Corp.*, 464 F.Supp. 377, 379 (W.D.Pa.1979). Thus, MEI's one hundred percent ownership of MECA establishes neither an alter ego nor an agency relationship.[5]

■ Second, the fact that MECA's chairman, Akiya Imura, is a member of MEI's Board of Directors alone does not establish control of MECA by MEI. Common officers and directors may be evidence that one corporation is the alter-ego of another, but they are not necessarily conclusive on the issue. *Savin*, 661 F.Supp. at 469; 2 *Moore's Federal Practice* ¶ 4.41–1[6], at 4–373. In *Savin Corp. v. Heritage Copy Prod., Inc.*, 661 F.Supp. 463, 469 (M.D.Pa.1987), four of twelve directors of a subsidiary were current or former officers of its parent corporation, and four of the twelve directors of the subsidiary were also directors of its parent corporation. *Id.* at 470. In addition, a director of the parent corporation made weekly visits to oversee the operations of the subsidiary, and the parent company had input regarding the salaries of the subsidiary's top-level executives. *Id.* Yet, in *Savin*, this court concluded that there was insufficient evidence to "convince the court that [the parent] exercised the type of control over [the subsidiary's] day-to-day operations which would evidence an alter-ego relationship." *Id.* The type of control the *Savin* parent exhibited was "no more than what would be expected of a majority shareholder." *Id.*

In the captioned case, Plaintiffs have presented far less evidence than was offered and deemed *insufficient* in *Savin*. Plaintiffs have not presented any evidence that there are common members on the MEI and MECA Boards of Directors, or that any officers or directors are common to both companies, except Mr. Imura. Nor is there evidence of a history or pattern of control over MECA by current or former MEI employees. Plaintiffs' entire showing on the control issue is that one officer of MECA also sits on the Board of Directors of MEI. This is far short of the evidence of actual day-to-day control by MEI that is required.

■ Evidence that MECA may be an exclusive United States distributor of certain electronics products manufactured by MEI is also insufficient to show that MECA is the mere agent or alter ego of MEI. The cases cited by Plaintiffs to support the assertion of jurisdiction based on an exclusive agency relationship are inapposite here. Plaintiffs cite *Hewitt v. Eichelman's Subaru, Inc.*, 341 Pa.Super. 589, 492 A.2d 23 (1985), for the proposition that an exclusive distributorship relationship between a parent manufacturer and a subsidiary is sufficient to assert jurisdiction over the parent. In *Hewitt*, the Pennsylvania Superior Court did hold a foreign automobile manufacturer, Fuji, subject to jurisdiction based on its relationship with a wholly-owned United States subsidiary, Subaru of America ("SOA"). SOA was the exclusive United States distributor for the cars manufactured in Japan by Fuji. However, the *Hewitt* court made a number of specific findings about the extent of the automobile distribution system, including the number of Pennsylvania dealers and automobile sales in recent years. *Id.* at 595, 492 A.2d at 25–26. Based on these findings and on the fact that Fuji had a

---

**5.** This court recognizes that several courts have not followed the *Cannon* alter-ego test. *See, e.g., Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 402 F.Supp. 262 (E.D.Pa.1975); *Allen Organ Co. v. Kawai Musical Instruments Mfg. Co.*, 593 F.Supp. 107 (E.D.Pa.1984). This court previously declined to apply the *Zenith* and *Allen Organ* approaches in a situation analogous to this case, *Savin*, 661 F.Supp. at 468, and declines to do so now. First, *Zenith* was an antitrust case and the caselaw the *Zenith* court applied to distinguish *Cannon* was specific to the antitrust context. The *Zenith* approach appropriately is limited to the antitrust context. *See Savin*, 661 F.Supp. at 468. Second, *Allen Organ* relied on the stream of commerce theory to support its assertion of jurisdiction over a foreign manufacturer. The validity of that theory is dubious after its rejection by a four justice plurality of the United States Supreme Court in *Asahi*, 480 U.S. at 112, 107 S.Ct. at 1032.

five-person "liaison office" at SOA's headquarters, the court held Fuji subject to jurisdiction based on the contacts of its subsidiary SOA. *Id.* Plaintiffs in the instant case have not offered any such specific evidence regarding the distribution scheme of MEI or MECA.

Furthermore, *Hewitt* involved the assertion of *specific* jurisdiction. The *Hewitt* litigation arose from the contacts of Fuji/SOA with the forum. *Hewitt* arose out of an accident involving a Fuji automobile; the contacts and activities that were attributed to Fuji were those of SOA, the American distributor of the very automobile at issue in *Hewitt*. The *Hewitt* court never found that Fuji was subject to *general* jurisdiction based on its relationship with its distributor. The captioned case would parallel *Hewitt* if Plaintiffs were alleging that MEI were subject to specific jurisdiction based on its relationship with *DESA* and *DESA*'s contacts with Pennsylvania. Instead, Plaintiffs are asserting that the contacts of MECA, a subsidiary with no connection to the kerosene heater at issue, are sufficient to hold MEI subject to jurisdiction. *Hewitt* provides no support for this.

■ The two remaining factors relevant to general jurisdiction also weigh against an assertion of general jurisdiction over MEI. First, there is no evidence that the subsidiary, MECA, played any part in the manufacture or sale of the heater here. Though Plaintiffs have alleged that MECA may have manufactured or distributed the heater, (Plaintiffs' Amended Complaint, ¶ 8), they have presented absolutely no evidence to substantiate it. The burden is clearly on Plaintiffs to establish such a

connection by sworn affidavits or other competent evidence. *Time Share Vacation Club*, 735 F.2d at 66–67 n. 9. Although Plaintiffs have had ample opportunity for discovery and ample time to fully brief this issue, they have not met this burden.

■ Finally, there is no evidence that the independence of the separate corporate entities was disregarded. For instance, Plaintiffs have presented no evidence that MECA did not maintain separate corporate records, hold separate corporate meetings, or file its own tax forms. The court finds that the only evidence arguably supporting this proposition, MEI's lumping together of financial information for MEI and its subsidiaries in its annual report, has little, if any, probative value.

Plaintiffs have failed to show that MECA is merely an agent/alter ego of MEI rather than an independent entity.[6] Therefore, if MEI is subject to general jurisdiction, it must be because of MEI's own contacts with Pennsylvania, in contrast to those of its subsidiary MECA.

■ The direct MEI contacts cited by Plaintiffs are too scant and attenuated to permit the assertion of general jurisdiction over MEI by this court. Those contacts include: (1) the fact that MEI "assumes" that certain of its products are ultimately sold in Pennsylvania; (2) MEI has a subsidiary which is incorporated in New Jersey which "develops technologies for the U.S. market;" (3) MEI has an ownership interest in MCA, Inc., which in turn owns Universal Studios, a major U.S. film producer; (4) MEI markets flat screen televisions in North America; and (5) MEI reports sales

6. Plaintiffs also have not established any link between MEI and DESA sufficient to impute the acts of DESA to MEI. Even assuming that DESA did distribute MEI kerosene heaters in Pennsylvania, Plaintiffs have not proven that DESA was the agent or alter ego of MEI. The only arguable evidence of such a relationship offered by Plaintiffs is an answer to one of Plaintiffs' interrogatories. MEI's answer to interrogatory 22 states, in relevant part, "There is no business and/or legal relationship between

[MEI] and DESA International. [MEI] believes that its subsidiary, Matsushita Housing Products Co. Ltd. (MHP), had a business relationship with DESA International in the past, but answering defendant has no direct relationship with DESA." (Plaintiffs' Brief in Opposition, Exhibit B, ¶ 22.) The mere existence of a past business relationship between a subsidiary of MEI and DESA is too tenuous a link to serve as a basis for the exercise of specific jurisdiction.

figures in Japanese yen and U.S. dollars. (Plaintiffs' Brief in Opposition at 4–6.)

First, under the principles discussed above, the mere fact that MEI "assumes" or knows that its products are likely to end up in Pennsylvania is not sufficient to find personal jurisdiction. *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032.

Second, the fact that an MEI subsidiary conducts research and targets products for the United States market is largely irrelevant, absent a clear showing of control of the subsidiary by the parent corporation, *Lucas,* 666 F.2d at 805–06; *Savin,* 661 F.Supp. at 469; *Moore's Federal Practice* ¶ 4.41–1[6], at 4–368, and a showing that MEI "purposefully directed" the research at Pennsylvania residents or consumers. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181. The same is true with respect to MEI's ownership interest in MCA, Inc., and through MCA, of Universal Studios.

Similarly, absent a showing that such products are marketed in Pennsylvania or targeted at Pennsylvania residents, the fact that MEI allegedly markets flat-screen televisions in North America is largely irrelevant. *Id.* Neither the United States Supreme Court nor the Third Circuit have adopted a "national contacts" test.[7] In fact, the Third Circuit explicitly rejected the utilization of such a test without explicit legislative authorization. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 297 (3d Cir.1985). In any event, beyond a single statement from MEI's annual report, Plaintiffs have presented no relevant data for this court to utilize in assessing MEI's contacts with United States or Pennsylvania markets.

Finally, the fact that MEI reports its sales figures in both Japanese yen and United States dollars is wholly irrelevant. In a world-wide economy in which capital travels relatively freely between nations and markets, it is not at all surprising that sales figures are reported in currencies other than the national currency of the corporation.

Thus, there is insufficient basis to assert general jurisdiction over MEI. Because there is also no basis for the assertion of specific jurisdiction over MEI, MEI will be dismissed as a party to this action.

## II. Motion for Reconsideration

Because MEI will be dismissed as a party to this action due to lack of personal jurisdiction, MEI's motion for reconsideration is moot.

An appropriate order will be issued.

## ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) The motion of Matsushita Electric Industrial Company, Ltd. to dismiss it as a party to this action due to lack of personal jurisdiction is GRANTED;

2) The motion of Matsushita Electric Industrial Company, Ltd. for reconsideration of this court's order of July 31, 1992 is dismissed as MOOT; and

3) The clerk of court is directed to remove the name of Matsushita Electric Industrial Company, Ltd. from the caption of this action.

---

**7.** In *Asahi,* the United States Supreme Court expressly declined to decide the constitutionality of aggregating national contacts in order to assert personal jurisdiction over a party. 480 U.S. at 113, 107 S.Ct. at 1032.