635 A.2d 698

**ZOTIS ENTERPRISES, INC., Petitioner,**

v.

**DEPARTMENT OF LABOR AND INDUSTRY, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 16, 1993.

Decided Dec. 17, 1993.

Chris J. Balouris, for petitioner.

Jane C. Pomerantz, Asst. Counsel, for respondent.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

Zotis Enterprises, Inc. (corporation) petitions for review of the Department of Labor and Industry's (Department) assessment of increased unemployment compensation insurance for the years 1986, 1987, 1988, 1989 and 1990.

Since 1971, Constantin Zotis (Zotis) owned and operated Belmar Candy Company (Belmar) as a sole proprietorship. Through Belmar, he maintained an unemployment insurance account with the Department to which he made contributions in accordance with Section 301(a)(1) of the Unemployment Compensation Law (Law).[1]

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 781(a)(1). Pursuant to Section 301(a)(1), contribu-

In 1985, wishing to provide for a continuity of ownership of the business within the Zotis family after his death, Zotis incorporated Zotis Enterprises, Inc. to assume ownership of Belmar. Upon incorporation, Zotis was issued 20% of the authorized 500 shares of corporate stock, with the rest being issued to family members and the corporation's attorney.[2] Zotis was named Director, Chairman and President of the corporation. His son, Dean Zotis, was named Director and Secretary, while another son, Nick Zotis, was named Director and Treasurer.

Zotis, on behalf of the corporation, applied for unemployment compensation insurance as if the corporation was a new business. Pursuant to Section 301(a)(4) of the Law, new businesses are entitled to a reduced rate of contribution for the first three years of operation. Following an investigation, the Department determined that Zotis controlled both the corporation and Belmar, disallowed the reduced new business rate and assessed the corporation at Belmar's old rate. See 43 P.S. § 781(d)(1)(B)(II).[3]

tion rates for current unemployment insurance accounts were established as follows:

    1984—8.5% of wages paid
    1985—8.8% of wages paid
    1986 and thereafter—9.2% of wages paid
Section 301(a)(2) established rates for delinquent accounts at:
    1984—9.2%
    1985—9.4%
    1986 and thereafter—9.7%
The record indicates that Belmar was current in its accounts and was required to pay the rates established in Section 301(a)(1) through 1985.

2. The Department did not make a finding of fact as to the actual percentage of ownership Zotis held in the corporation. Nick Zotis did testify that Zotis owned 20% of the stock in the corporation.

3. Section 301(d)(1)(B)(II) provides:

The department shall transfer the experience record and reserve account balance (whether positive or negative) of such employer to its successor-in-interest if it finds that (I) such employer was owned or controlled by or owned or controlled the successor-in-interest either directly or indirectly, by legally enforceable means or otherwise, or (II) both such employer and successor in interest were owned or controlled either directly or indirectly, by legally enforceable means or otherwise, by the same interest or interests.

The corporation appealed the assessment to the Secretary of Labor and Industry (Secretary) and a hearing was scheduled before a hearing officer. At the hearing, the corporation admitted that while Zotis, as its President, Director and Chairman, had the authority to make business decisions and sign checks, he was 90% retired from the business, owned only a minority interest and did not take part in its day-to-day operation. The Secretary, through the Deputy Secretary for Administration, found that both Belmar and the corporation were both controlled by Zotis and that Section 301(d)(1)(B)(II) required that the corporation be assessed at the rate established by Belmar. This appeal followed.[4]

The only issue before us is whether Zotis had sufficient control over Zotis Enterprises, Inc., so as to require that the account experience of Belmar be transferred to the corporation under Section 301(d)(1)(B)(II) of the Law. The corporation contends that because Zotis did not actually exercise any control over its day-to-day operation, the Department improperly determined that such control existed. The Department, while conceding that Zotis may not have exercised such control, nonetheless argues that it is the ability to control rather than its exercise which is at issue, and that the evidence of record establishes Zotis as having the authority, if not the inclination, to control the operation of the corporation.

The corporation contends that Belmar's account experience should not be transferred to it because Zotis did not, in fact, exercise any control over its day-to-day operations. While it concedes a showing that a person has the ability to control an enterprise establishes *prima facie* evidence of control, it con-

43 P.S. § 781(d)(1)(B)(II). Because the corporation's account became delinquent due to the insufficient contributions, the Department made its assessment at the penalty rate established in Section 301(a)(2) of the Law.

**4.** Our scope of review is limited by Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, to determining whether the necessary findings of fact are supported with substantial evidence, whether the Department committed an error of law, or whether the petitioner's constitutional rights were violated. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

tends that this presumption can be overcome by a showing that it was not exercised. The Department, while conceding that Zotis may not have exercised day-to-day control, nonetheless contends that his ability to control the corporation is the sole factor to determine whether the account experience should be transferred from one entity to another for the purposes of determining the rate of unemployment compensation contributions.

While we have not addressed the meaning of "control" as used in Section 301(d)(1)(B)(II), we have defined what constitutes control to determine if an individual had sufficient control over a business as to be self-employed under Section 402(h) of the Law. 43 P.S. § 802(h). We have consistently held that the ability to control the business, not actual control, is determinative of whether one should be considered self-employed and ineligible for unemployment compensation benefits. See 43 P.S. §§ 753(*l*)(2)(B), 802(h); *Starinieri v. Unemployment Compensation Board of Review*, 447 Pa. 256, 289 A.2d 726 (1972), *accord, Biter v. Department of Labor and Industry*, 39 Pa.Commonwealth Ct. 391, 395 A.2d 669 (1978); and *Jardine v. Unemployment Compensation Board of Review*, 36 Pa.Commonwealth Ct. 344, 387 A.2d 1013 (1978). Illustrating that the ability to control is determinative rather than managing the day-to-day operation of a business is our decision in *Friedman v. Unemployment Compensation Board of Review*, 99 Pa.Commonwealth Ct. 369, 513 A.2d 560 (1986), involving whether a claimant was self-employed. Claimant was a 20% shareholder who was in charge of day-to-day operations, but did not have the ability to set the overall direction of the business. We held that merely being in charge of day-to-day operations did not make the claimant self-employed and ineligible for benefits. Employing the analysis of whether a person controls a business to determine if he or she is self-employed is also appropriate to determine whether a successor business is controlled by a previous owner because, just as in the self-employment analysis, whether one decides to exercise a right to control when they have the ability to do so only means that they have declined to exercise it, not that they do not have control.

In this case, Zotis, in addition to being the President, Director and Chairman of the corporation, was a substantial shareholder with the ability to issue checks and other documents, including tax returns and applications for the corporation's unemployment insurance rate discount, as well as the ability to make decisions on how the business was to be run. In *Salamak v. Unemployment Compensation Board of Review*, 91 Pa.Commonwealth Ct. 493, 497 A.2d 951 (1985), we held, *albeit* in interpreting Section 402(h) of the Law, that holding such positions and having such abilities was sufficient to indicate control over a corporation. Applying the analysis used in *Salamak* to the instant case, we agree with the Department that Zotis' positions and powers are such to find that he had the ability to control the successor-in-interest corporation as contemplated in Section 301(d)(1)(B)(II) of the Law. Accordingly, the Department's assessment of the corporation's unemployment insurance account was proper.

## ORDER

AND NOW, this 17th day of December, 1993, the order of the Department of Labor and Industry, No. 6917, dated January 8, 1993, is affirmed.