**The GLIDDEN COMPANY, INC., Petitioner,**

v.

**DEPARTMENT OF LABOR AND INDUSTRY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1996.

Decided Aug. 15, 1997.

Reargument Denied Oct. 17, 1997.

Kathryn H. Levering, Philadelphia, for petitioner.

Jane C. Pomerantz, Deputy Chief Counsel, Harrisburg, for respondent.

Before SMITH and LEADBETTER, JJ., and LORD, Senior Judge.

LEADBETTER, Judge.

The Glidden Company, Inc. (Glidden) appeals from the order of the Pennsylvania Department of Labor and Industry (DLI) requiring a retroactive increase in the unemployment compensation tax rate paid by Glidden. The question presented on appeal is whether the sale of the stock of a corporation from one independent parent corporation to another constitutes a transfer between employers under Section 301(d)(1)(B) of the Unemployment Compensation Law (Law), December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 781(d)(1)(B).[1]

1. The relevant portion of Section 301(d)(1)(B) provides:

[w]ith respect to any transfer by an employer subject to the contribution provision of this act of its organization, trade or business, in whole

Although only one[2] in a long series of corporate transfers is involved in the present appeal, the entire history is set out to put the disputed transaction in context.

Glidden is a corporation engaged in the manufacture and sale of paint products. Prior to March 31, 1986, Glidden was "Glidden Coatings and Resins Division," a division of SCM Corporation (SCM).[3] Then, on March 31, 1986, Hanson Trust Co. (Hanson) acquired the Glidden Coatings and Resins Division through a hostile takeover of SCM. In August 1986, Hanson placed the assets of the Glidden Coatings and Resin Division into its subsidiary corporation, HSCM–6, which was later renamed "The Glidden Company."

In October 1986, ICI American Holdings, Inc. (ICI), purchased 100% of the stock of The Glidden Company from Hanson. Despite this stock transfer, The Glidden Company continued to exist as the same operating corporate entity. On December 23, 1986, ICI submitted an Employer's Initial Statement (EIS) to the Bureau of Employer Tax Operations (Bureau) to register the unemployment compensation tax account of The Glidden Company. Thereafter, ICI sought "new employer" status for The Glidden Company pursuant to Section 301(a)(4) of the Law.[4] Specifically, ICI claimed that the stock purchase from Hanson was a transfer of business and that there was no common ownership or control between Hanson and ICI.

On December 30, 1986, The Glidden Company was formally dissolved and its assets distributed to two of ICI's subsidiaries. One of the subsidiaries, Atkemix–Eight, Inc., was then renamed "The Glidden Company, Inc." (This corporation, which is the appellant herein, is referred to simply as "Glidden." References to "The Glidden Company" relate to the corporation originally known as "HSCM–6" transferred from Hanson to ICI.) Glidden then filed a second EIS with the Bureau in which it acknowledged common ownership between ICI and Glidden. Thereafter, Glidden paid its unemployment compensation taxes based on the "new employer" rate, even though DLI had not yet ruled on ICI/Glidden's application for the new rate. The Bureau accepted payment at this rate for four years. In April 1991, however, the Bureau informed Glidden that ICI's purchase of 100% of the stock of The Glidden Company from Hanson was not a transfer between employers because the employer, The Glidden Company, never changed despite the change in legal ownership. Thus, The Glidden Company retained its experience rating and reserve account balance, even after its stock was acquired by ICI. Glidden paid the assessed "delinquent" unemployment compensation tax, but appealed the Bureau's decision to DLI. DLI conducted a hearing and issued its order denying Glidden's appeal in February of 1996.

■ In this appeal, Glidden contends that DLI erred in concluding that the sale of The Glidden Company from Hanson to ICI by a written agreement and 100% stock purchase did not constitute a transfer between employers. Specifically, Glidden argues that DLI's interpretation of Section 301(d)(1)(B) is contrary to the section's language and plain meaning. The section language at issue is:

any transfer *by an employer* ... of its organization, trade or business in whole or in part, whether such transfer was by merger, consolidation, sale or transfer, descent or otherwise....

43 P.S. § 781(d)(1)(B) (emphasis added).

■ Initially, we emphasize that "the interpretation given to a statute by the agency

---

or in part, whether such transfer was by merger, consolidation, sale or transfer, descent or otherwise, the department shall transfer the experience record and reserve account balance (whether positive or negative) of such employer to its successor-in-interest if it finds that (I) such employer was owned or controlled by or owned or controlled the successor-in-interest either *directly* or indirectly, by legally enforceable means or *otherwise* or (II) both such employer and successor-in-interest were owned or controlled either directly or indirect-

ly, by legally enforceable means or otherwise, by the same interest or interests.

**2.** The transfer of The Glidden Company from Hanson to ICI.

**3.** For a concise summary of the various changes in ownership of The Glidden Company, see R. 123a.

**4.** 43 P.S. § 781(a)(4).

charged with its application is entitled to great weight and should be disregarded or overturned only if such construction is clearly erroneous." *Zemprelli v. State Employees' Retirement Bd.*, 680 A.2d 919, 921 (Pa. Cmwlth.1996), *appeal denied*, 547 Pa. 739, 690 A.2d 239 (1997). Moreover, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *Allegheny County Institution Dist. v. Dep't. of Public Welfare*, 668 A.2d 252 (Pa.Cmwlth.1995), *appeal denied*, 547 Pa. 757, 692 A.2d 567 (1997). DLI interpreted the language of Section 301(d)(1)(B) to mean that the provisions of the section are applicable only when there has been a transfer of business *from* one *employer* to another *different* employer, and we agree that the plain language of the statute supports, if not mandates, this interpretation. This is not the end of the inquiry, however. Hanson indisputably transferred its subsidiary corporation, The Glidden Company, to ICI. The critical question then becomes whether Hanson, the transferor-parent, or The Glidden Company, the transferee-subsidiary, was the "employer."

In its brief to this Court, Glidden asserts that the term "employer" as used in Section 301, refers to the legal owner of the corporation. To accept Glidden's definition of "employer," however, would require this Court to ignore the general principles of corporate law which recognize The Glidden Company as an entity which is separate and distinct from the parent corporation that owns its stock. *Clark v. Matsushita Electric Indus. Co.*, 811 F.Supp. 1061, 1067 (M.D.Pa.1993)("[S]ubsidiaries, even if wholly-owned, are presumed separate and distinct entities from their parent corporations.") The statutory definition of "employer" under the Law[5] states in relevant part that:

> "**Employer**" means the Commonwealth of Pennsylvania, its political subdivisions, and

their instrumentalities and every individual, copartnership, association, corporation (domestic or foreign) ... who or which employed or employs any employe in employment subject to this act for some portion of a day during the calendar year....

In addition, the Law defines "employment" as "all personal service performed for remuneration by an individual under any contract for hire...."[6] The testimony presented at the hearing established that, both before and after the 100% stock transfer, The Glidden Company employed and retained responsibility for the compensation of its employees. (R. 73a–77a). In fact, despite the change in legal ownership of the corporation, it was The Glidden Company, not ICI, which actually paid employees after the stock transfer. (R. 76a–77a). At no time did The Glidden Company employees receive paychecks from either Hanson or ICI. *Id.* Based on these facts and despite the 100% stock sale between Hanson and ICI, we conclude that there was no change in "employers" under Section 301(d)(1)(B) because The Glidden Company, as a separate corporate entity, continued to exist and function as the employer despite the change in the ownership of its stock.[7]

Glidden cites *Zotis Enterprises, Inc. v. Dep't of Labor and Industry*, 160 Pa.Cmwlth. 568, 635 A.2d 698 (1993), *appeal denied*, 539 Pa. 662, 651 A.2d 547 (1994), in support of its position that DLI has previously treated the transfer of an ongoing business to a corporation as a transfer of business between employers for the purposes of Section 301(d)(1)(B). In *Zotis*, a sole proprietor, Zotis, incorporated his business, but only retained 20% of the authorized 500 shares of corporate stock. The corporation then applied for unemployment compensation insurance as if it were a new business. Following a hearing, DLI applied Section 301(d)(1)(B) and assessed the corporation at the same rate as the sole proprietorship because Zotis

---

**5.** Section 4(j)(1) of the Law, 43 P.S. 753(j)(1).

**6.** Section 4(*l*)(1) of the Law, 43 P.S. 753(*l*)(1).

**7.** Glidden also contends that DLI did not meet its burden of proof to establish that there was common ownership or control between Hanson and

ICI to support transferring the unemployment compensation experience record and reserve account balance. DLI concedes that it did not make such findings, however, it was not required to do so because it had properly concluded that no transfer between employers had occurred.

retained control of the new corporation. In affirming DLI's decision, this Court not only concluded that Zotis had retained control of the new corporation following the issuance of stock, but also implicitly accepted DLI's determination that Zotis' transfer of shares to the corporation was a "transfer" under Section 301, even when the original business continued to exist and operations continued without interruption.

*Zotis* is inapposite here, however, because of the fundamental differences between the two types of business entities. A sole proprietorship has no existence separate and apart from its owner,[8] while a corporation is an independent entity, *Lycoming County Nursing Home Ass'n v. Dep't of Labor and Industry*, 156 Pa.Cmwlth. 280, 627 A.2d 238, 243 (1993), whose legal status is unaffected by changes in the ownership of its stock.[9] Thus, in a sole proprietorship, the owner/sole proprietor *is* the employer, as he or she personally holds both the assets and liabilities of the business, including contractual rights and duties. "The sole proprietor is solely liable for all the debts of the business." *Black's Law Dictionary* 1392 (6th ed. 1990). Thus, *Zotis* presents a clear example of a transfer "*by an employer*," (Mr. Zotis) of a part of his business to another entity (the new corporation). It has no application in this setting, however, where shareholder(s), insulated by the corporate form of organization, have no obligation for the contracts of the company, including its employment agreements. 15 Pa.C.S. § 1526; *Village at Camelback Property Owners Ass'n, Inc. v. Carr*, 371 Pa.Superior Ct. 452, 458, 538 A.2d 528, 531, *affirmed* 524 Pa. 330, 572 A.2d 1 (1990)("[O]ne of the central reasons for conducting business in corporate form is the avoidance of personal liability by those holding equity in the corporation and the limitation of the risk of those persons to the value of their equity.") Thus,

it is the corporation not the shareholder(s), which is the employer.

Our conclusion is further buttressed by the fact that application of Glidden's definition of "employer" would create an absurd result in the common situation in which stock ownership is apportioned among large numbers of shareholders. Because Section 301(d)(1)(B) applies to transfers of a business "in whole or in part," if a sale of stock were considered to be a 301 "transfer," the sale of *any* share of stock by one of the numerous shareholders to an independent third party would allow the company to apply for a new unemployment compensation rate. We will not assume that the legislature intended such a result.

Next, Glidden argues that in determining whether a mandatory transfer of the unemployment compensation rate and experience record was required, the Bureau only considered the ICI's internal reorganization, wherein ICI transferred the assets of Glidden to its subsidiary Atkemix–Eight, instead of considering the initial stock sale of Glidden from Hanson to ICI. The testimony at the administrative hearing does not support this argument. (R. 61a–62a). Neither does the opinion filed by the hearing examiner. *In re The Glidden Company, Inc.* (No. 7030, filed February 13, 1996), slip. op. at 3. Rather, both show that DLI properly focused on the stock sale between Hanson and ICI in making its determination. Accordingly, we conclude that this issue is meritless.

■ Finally, Glidden contends that this Court should reverse DLI's decision because the Bureau failed to promptly notify Glidden of its contribution rate as required by Section 301(e)(2).[10] Specifically, Glidden argues that the Bureau violated statutory requirements and equitable tax principles by taking more than four years to process Glidden's tax application for "new employer" status and

---

**8.** A sole proprietorship has been defined as:

> A form of business in which one person owns all of the assets of the business in contrast to a partnership, trust or corporation.
>
> *Black's Law Dictionary* 1392 (6th ed. 1990).

**9.** Even where a corporation's stock is owned entirely by one person, the corporation is distinct from a sole proprietorship and is viewed as an

independent entity. *College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200 (1976).

**10.** 43 P.S. 781(e)(2). This section states that:

> The Department shall promptly notify each employer of his rate of contribution for the calendar year, determined as provided in this section. . . .

accepting Glidden's tax payments at the new employer rate without objection.

Initially, we must emphasize our agreement that DLI's failure to act on Glidden's application for over four years was unreasonable, despite the complexity of the corporate transactions surrounding the stock sale. After a review of the record, however, we must conclude that this issue has been waived because of Glidden's failure to properly raise it below at the administrative hearing or in its appeal to DLI. *See Victor v. Dep't of Labor and Industry,* 166 Pa.Cmwlth. 663, 647 A.2d 289, 293 (1994) (a party may not raise issues on appeal that have not been previously raised before the administrative agency).[11]

Based on the foregoing, we affirm.

## ORDER

AND NOW, this 15th day of August, 1997, the order of Department of Labor and Industry is hereby affirmed.

---

**11.** Glidden also contends that (1) DLI's interpretation of Section 301 violates Glidden's uniform taxation rights under Article 8, § 1 of the Pennsylvania State Constitution; and (2) DLI impermissibly applied the tax rate retroactively. Glidden failed to raise these issues at the administrative hearing or in its appeal to DLI, and, consequently, both issues have been waived for the purposes of review. *Id.*