would reverse the Commonwealth Court's decision.

Justice CASTILLE joins this dissenting statement.

**REESE TELESERVICES,
INC., Petitioner**

v.

**DEPARTMENT OF LABOR AND IN-
DUSTRY, Office of Unemployment
Compensation Tax Services, Respon-
dent.**

Commonwealth Court of Pennsylvania.

Argued Jan. 27, 2009.
Decided March 3, 2009.
Reargument Denied April 28, 2009.
Publication Ordered May 27, 2009.

Jeffrey B. Balicki, Pittsburgh, for petitioner.

Arthur Selikoff, Asst. Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and BUTLER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge BUTLER.

Reese Teleservices, Inc. (RTI) petitions for review of the October 11, 2007 order of the Department of Labor and Industry (Department) denying a review and redetermination of RTI's 2003, 2004 and 2005 compensation contribution rates, and affirming the Office of Unemployment Compensation Tax Services' (OUCTS) mandatory transfer of Reese Brothers, Inc.'s (RBI) experience record and reserve account balance to RTI under the Unemployment Compensation Law (Law).[1] RTI argues that it is entitled to new employer status when calculating its contribution rates, that it was entitled to the transfer of RBI's experience record following the sale of RTI's stock in April of 2005, and that it should have received notices of claims for unemployment compensation benefits by former RBI employees between January 1, 2003 and June of 2004. For the reasons set forth below, we disagree.

RBI, a Pennsylvania corporation that provides outbound telemarketing services, was formed in 1989 by Barry Reese (50% shareholder, president and treasurer) and Ralph Reese (50% shareholder, vice-president and secretary). Due to the significant growth of the company, RBI hired the following individuals to run RBI's day-to-day operations: James Epstein for strategic development, Christopher Ungarino

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751– 914.

for management ranging from sales to operations, and David Farr as chief financial officer. Due to some difficult financial situations, an outside consultant, Charles O'Hanlon, suggested that RBI be sold to its employees. Mr. Ungarino agreed to purchase RBI.

On October 24, 2002, Articles of Incorporation were filed for RTI identifying Mr. Ungarino as the sole incorporator and 100% owner of the company. Before closing the deal, however, Mr. Ungarino approached Barry Reese and requested that he help with the business transition, in order to provide assurance for its customers, and continuity for its employees. Mr. Reese agreed, but did not wish to be involved in the day-to-day operations of the company. Since neither Mr. Reese nor Mr. Ungarino wanted to own a majority interest in RTI, Mr. Reese was given 49% of the stock, Mr. Ungarino was given 47% of the stock, and they offered 4% of the stock to Mr. O'Hanlon, who would act as a tie-breaker if they disagreed on an issue. The three gentlemen were appointed to RTI's board of directors; each had one vote.

Mr. Reese actively served as chairman, secretary, and treasurer of RTI. Pursuant to Section 5.07 of RTI's bylaws, in the role of chairman, Mr. Reese was to preside at board and shareholder meetings and perform such other duties as may, from time to time, be requested by the board of directors. In his role as RTI's secretary, under Section 5.09 of its bylaws, Mr. Reese was responsible for attending meetings, recording votes and minutes, sending and filing notices, maintaining custody of records and executing all documents, except for setting the agenda. In his role as RTI's treasurer, under Section 5.10 of RTI's bylaws, Mr. Reese was responsible for the company's fiscal functions. Mr. Ungarino was RTI's president and, per Section 5.08 of its bylaws, generally supervised RTI's business and operations. He hired and fired employees, saw clients, signed checks, and sought advice from Mr. Reese. Mr. Reese claims to have been nothing more than a figurehead having no authority to bind the company, nor any influence over Mr. Ungarino or Mr. O'Hanlon. Section 4.10(a) of RTI's bylaws provides that actions of a quorum at a meeting shall be the acts of the board of directors.

RBI's assets were sold to RTI effective January 1, 2003. RTI first paid wages as an employer subject to the Law on January 10, 2003. The Pennsylvania Enterprise Registration Form (Form PA–100), filed by RTI on January 30, 2003, indicated that RBI was the predecessor to RTI, but that no owner, officer, shareholder or director of RTI was also an owner, officer, shareholder or director of RBI. As a result, the Department granted RTI new employer status, and closed RBI's account. RTI did not receive notices from the Department of RBI employee unemployment compensation claims filed between January of 2003 and June of 2004, despite RTI's requests to the Department. Following an inquiry by the Department, on September 24, 2003, Mr. Ungarino again submitted the Form PA–100, but without reviewing it for accuracy. On December 22, 2003, Mr. Ungarino was contacted relative to RTI's actual ownership. On July 25, 2004, the Department modified RTI's contribution rates for 2003, 2004 and 2005, basing them upon the transfer of the experience record and reserve account balance from RBI. RTI appealed the modification. On December 31, 2004, the Department revised RTI's 2005 contribution rate, and RTI appealed the revision.

On April 6, 2005, pursuant to a stock purchase agreement, RTI sold substantially all of its stock to The Resource Group

International, Ltd. (RGIL). Mr. Reese and Mr. O'Hanlon resigned their positions with RTI. Mr. Ungarino remained as RGIL's president, chief executive officer and 20% shareholder. Hasnain Aslam became chairman of the board, and Nadeem Elahi and Tanvir Hussain became directors. RTI sought another review of its 2005 contribution rate following this sale.

On May 31, 2005, the OUCTS denied RTI's appeals of its 2003, 2004 and 2005 contribution rates. RTI requested a review by the Department, and a hearing was held on July 13, 2006 before a presiding officer for the Department. On October 11, 2007, the Department issued its final decision and order affirming the OUCTS decision and denying RTI's appeal. On November 13, 2007, RTI filed its appeal to this Court.[2]

■ Pennsylvania employers are required to make certain contributions to the Unemployment Compensation Fund.[3] Section 301(a)(4) of the Law, 43 P.S. § 781(a)(4), provides that new businesses are entitled to a reduced rate of contribution. To prevent employers from transferring their businesses or creating new entities in order to obtain lower rates of contribution, Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B), provides that where predecessor and successor employers are owned or controlled, either directly or indirectly, by legally enforceable means or otherwise, by the same interests, then the accumulated experience record and reserve account balance of the predecessor employer must be assigned to the successor employer.

RTI argues that neither the law nor the evidence supports the Department's determination that Mr. Reese had the ability to exercise a substantial degree of control in RTI, since he was not a majority shareholder, he did not control the board of directors, he merely attended board meetings, and he did not actually handle financial matters. RTI claims that, since Mr. Reese did not exercise control over RTI, RTI cannot be considered a successor-in-interest to RBI for purposes of unemployment contribution rates.

In *Univ. City Hous. Co. v. Unemployment Comp. Bd. of Review*, 114 Pa. Cmwlth. 607, 539 A.2d 489 (1988), this Court described factors to be considered in determining whether a person exercises control in a corporation, including: the percentage of stock owned by claimant; whether claimant is an officer; the characterization given the employment relationship by laypersons; and, claimant's title. Moreover, this Court has held in experience record transfer cases like this, that it is "the ability to control the business, not actual control, [that] is determinative...." *Zotis Enters., Inc. v. Dep't of Labor and Indus.*, 160 Pa.Cmwlth. 568, 635 A.2d 698, 700 (1993).

Here, Mr. Reese, a 50% shareholder of the predecessor corporation, also held nearly half of the stock of what RTI deems the "new" corporation. Reproduced Record (R.R.) at 38a–39a, 49a–50a, 73a, 211a, 279a, 280a. The record is clear that, as chairman of the board of directors, Mr. Reese participated in monthly meetings, and he regularly discussed and lent his expertise regarding ongoing issues regard-

---

**2.** This Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the Department committed an error of law, or whether constitutional rights were violated. *Zotis Enters., Inc. v. Dep't of Labor and Indus.*, 160 Pa.Cmwlth. 568, 635 A.2d 698 (1993).

**3.** Sections 3, 4, 301 and 301.1 of the Law, 43 P.S. §§ 752, 753, 781, 781.1. Section 301.1 of the Law was added by the Act of December 17, 1959, P.L. 1893, § 3.

ing RTI. R.R. at 38a, 42a, 51a–52a, 78a, 103a–104a, 136a. Further, decisions for RTI required votes of a quorum, which consisted of Mr. Reese and Mr. Ungarino. R.R. at 300a. Since these two gentlemen always agreed, Mr. O'Hanlon's tie-breaker vote was not necessary. R.R. at 74a, 83a, 102a, 125a. According to RTI's bylaws, unanimous votes of the entire board were only necessary for: a transfer of substantially all of RTI's assets; modifying the license, non-compete or employment agreements; or for early termination of the license agreement. R.R. at 80a–81a, 300a. As secretary, although RTI claims that Mr. Reese merely attended meetings, RTI's bylaws authorized him to attend all meetings and record votes and minutes, send and file notices, maintain custody of records and execute all documents. R.R. at 38a, 104a, 123a, 303a. As treasurer, although RTI claims that Mr. Reese allowed the chief financial officer to handle everything, the bylaws authorized Mr. Reese to oversee all aspects of RTI's finances. R.R. at 38a, 41a, 303a.

It is clear that, while RTI claims that Mr. Reese was merely a figurehead of RTI, he exercised or had the authority to exercise a great deal of control over both companies. The Department did not, therefore, err as a matter of law, and there was substantial evidence to support its conclusion that Mr. Reese had sufficient "control" over RTI, at the time of its purchase of RBI, to require that RBI's experience record and reserve account balance be assigned to RTI.[4]

As to whether the Department erred in failing to make a determination on the transfer of RBI's experience record following the sale of stock of RTI to RGIL in April of 2005, RTI argues that substantially all of the capital stock of RTI was sold to RGIL, pursuant to a stock purchase agreement. Mr. Reese and Mr. O'Hanlon surrendered their positions with RTI, leaving only Mr. Ungarino with an interest therein. RTI states that, since there is no basis for the Department to conclude that RTI remains the successor to RBI, RTI's contribution rate should be retroactively reduced from April 6, 2005 through the present time.

This Court has held that where one corporate employer transfers its business to another corporate employer, "it is the corporation not the shareholder(s), which is the employer." *Glidden Co., Inc. v. Dep't of Labor and Indus.*, 700 A.2d 555, 558 (Pa.Cmwlth.1997). And, that "[e]ven where a corporation's stock is owned entirely by one person, the corporation ... is viewed as an independent entity." *Id.* at n. 9. In *Glidden,* this Court held that there was no transfer between employers where 100% of the stock of an employer subsidiary corporation was transferred from one

---

**4.** The Department argued in the alternative that, even if this Court determines that Mr. Reese alone had insufficient control over RTI to mandate a transfer of RBI's experience record and reserve account balance to RTI, it should nevertheless affirm the Department's decision on the ground that both RBI and RTI were controlled by the same interests—Mr. Reese and Mr. Ungarino. On June 2, 2008, RTI filed with this Court a motion to strike the Department's "joint control" argument, as it was not previously raised by the Department. The Department responded that it raised the issue after being made aware of it at the July 13, 2006 hearing and that, because RTI did not raise its objection in its petition for review, it is now precluded from doing so. On July 3, 2008, RTI filed a petition for oral argument. By order issued by this Court on July 8, 2008, RTI's petition for oral argument was granted, and its motion to strike was set for argument at the same time as the argument on the merits of this case on January 27, 2009. In light of this holding, however, this Court need not address the issue of the Department's joint control argument, so RTI's motion to strike is denied.

independent parent corporation to another independent corporation, since the subsidiary employer corporation did not change despite the change in ownership of its stock.

RGIL purchased all but 20% of the stock of RTI. R.R. at 73a, 106a, 109a, 363a–368a. Except for a change in its chairman of the board and certain directors, there was no evidence that RTI's business operation otherwise changed. R.R. at 106a, 109a, 363a–368a. RTI, therefore, remained the employer. Further, the timeframe for determining whether there should be a transfer of the experience rate and reserve account balance to a successor entity is at the time of the transfer of one employer to another employer. The transfer of RBI to RTI occurred on December 31, 2002. R.R. at 147a. The 2005 change in ownership and control of RTI to RGIL is, therefore, irrelevant. Since RTI was not a new employer, it is not entitled to a reduced contribution rate. Accordingly, the finding that it was not a new employer was supported by substantial evidence.

As to whether RTI's constitutional right to due process was violated by the Department's failure to give notice of applications for unemployment compensation benefits by former RBI employees between January of 2003 and June of 2004, David Farr testified that RBI contested approximately 30% to 40% of its unemployment compensation claims, and won approximately half of them. R.R. at 130a–131a, 133a–134a. Despite its requests to the Department, RTI did not receive from the Department RBI's former employees' unemployment compensation claims until the Department determined that RBI's experience record and reserve account balance should be transferred to RTI. R.R. at 133a–135a, 137a–138a, 146a. RTI claims that, since it did not have the opportunity to contest

claims against RBI, the rating ultimately attributed to it was inflated. R.R. at 132a–133a.

■ The Department argues that RTI claimed at the hearing that the Law was unconstitutional, but before this Court RTI claims that the Department acted unconstitutionally, thus waiving the issue. We disagree. While Pa. R.A.P. 1551(a) generally prohibits consideration of questions not raised before the government unit below, we hold that RTI did not waive the issue for purposes of this appeal. RTI sufficiently raised the issue of the constitutionality of the Department's failure to provide RBI's notices at the hearing below.

■ Notwithstanding, we reject the argument that the Department violated RTI's constitutional right to due process. First, there was no evidence that any unemployment claims were filed between January of 2003 and June of 2004, nor that RBI failed to continue its practice of contesting any such claims during this period. Thus, the argument that RTI suffered injury because the Department failed to give notice of claims is purely speculative.

■ Further, RTI's due process argument fails because RTI failed to raise a constitutionally protected property interest. RTI cites a single case, *Montgomery County Tax Claim Bureau v. Mermelstein Family Trust*, 836 A.2d 1010 (Pa.Cmwlth. 2003), in support of its claim that it was deprived of due process when the Department did not supply it with RBI's claim notices. That case, however, merely sets forth the general principle that due process requires that persons will not be deprived of their property without notice and an opportunity to be heard. More specifically, "[t]he requirements of procedural and substantive due process apply to the deprivation of a property ... interest. In

order to have a property interest, a litigant must have *an enforceable expectation* created either by statute or contract." *Pennsylvania Soc. Servs. Union, Local 668 v. Dep't of Pub. Welfare, Office of Inspector Gen.*, 699 A.2d 807, 812 (Pa.Cmwlth.1997) (citations omitted) (emphasis added).

Section 501 of the Law, 43 P.S. § 821, states in pertinent part:

(a) The department shall promptly examine each application for benefits and on the basis of the facts found by it shall determine whether or not the application is valid. Notice shall be given by the department in writing to the claimant and each base-year employer of the claimant, stating whether or not the claimant is eligible ... and, if declared eligible thereunder, the weekly benefit rate and the maximum amount of compensation payable: Provided, That where the reserve account of a base-year employer has been transferred to a successor-in-interest, such notice shall be given to the successor-in-interest and not to the original base-year employer, and: Provided further, That no notice need be given to a base-year employer who has been released by the department from filing contribution reports.

(b) Notice shall be given in writing to the last employer of the claimant stating that an application has been filed by the designated employe.

It is clear that the Department is mandated to supply claim notices to employers until the reserve account of a business is transferred to a successor-in-interest. Therefore, before RBI's experience record and reserve account balance were transferred to RTI in 2004, the Department was required to continue to send notices of requests for unemployment compensation benefits by RBI's former employees to RBI. Thus, RTI did not have an enforceable expectation regarding the unemployment compensation applications filed against RBI between January of 2003 and June of 2004. While it is true that, there was a delay in the Department's determination that RBI's experience record and reserve account balance must be transferred to RTI, that delay was the direct result of RTI's misrepresentations to the Department. The Department's initial conclusion that RTI was a new employer was based upon RTI's January 30, 2003 Form PA–100 filing falsely representing that there was no common ownership between RTI and RBI at the time of its transfer. R.R. at 94a–96a, 175a–183a, 215a–250a. Thereafter, RTI's filing to the Department remained unchanged, even after the Department requested follow-up information nine months later. R.R. at 175a–187a, 239a–251a. The Department cannot be charged with the responsibility of notifying a successor-in-interest regarding unemployment compensation claims filed against the predecessor-in-interest where the successor-in-interest makes misrepresentations regarding ownership interest which cause the Department to view the successor-in-interest as a new employer. We hold, therefore, that RTI's constitutional right to due process was not violated by the Department's failure to provide it with notice of applications by former RBI employees for unemployment compensation benefits.

For the above reasons, the Department's order is affirmed.

### ORDER

AND NOW, this 3rd day of March, 2009, the October 11, 2007 order of the Department of Labor and Industry is affirmed, and the motion to strike filed by Reese Teleservices, Inc., is denied.