647 A.2d 289

**William R. VICTOR, t/a Victor's Helping Hands, Petitioner,**

v.

**DEPARTMENT OF LABOR AND INDUSTRY, Bureau of Employer Tax Operations, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1994.

Decided Aug. 18, 1994.

Paige F. MacDonald, for petitioner.

Jane C. Pomerantz, for respondent.

Before CRAIG, President Judge, and NEWMAN, Judge, and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

William R. Victor, t/a Victor's Helping Hands (Employer) petitions this Court for review of an order of the Department of Labor and Industry, Bureau of Employer Tax Operations (Bureau), which denied Employer's petition for reassessment of unemployment compensation tax due from it plus penalties and interest. The Bureau had previously assessed Employer as owing unemployment compensation taxes for the fourth quarter of 1988, the first, second and third quarters of 1989, and the first, second and third quarters of 1990. We affirm.

The facts as found by the Bureau are as follows. Employer is engaged in the business of providing professional home care services and obtains its clients through advertisements in the local newspaper and from referrals from physicians, social workers, hospitals and the Pennsylvania Department of Aging. Employer maintains a registry of aides who have completed an employment application, have signed a registration agreement, and are able to provide the various types of home care

services requested by its clients. Employer interviews prospective clients to determine what type of home care service is needed and then matches the client with an aide from its registry. While aides are free to refuse any assignment, they are required by Employer to sign the aforementioned registration agreement, which requires: 1) that they adhere to Employer's policies and standards; 2) that they agree that any changes in the terms of the agreement or working arrangements between the client and the aide be negotiated only through Employer; and 3) that they will not work on their own for any client assigned to them by Employer.

Employer also requires that the aide perform the service for the client personally and that the aide and the client sign a client-aide agreement, which is prepared by Employer. The client-aide agreement also provides the following: 1) that any aide secured by a client through Employer's registry shall only be employed through Employer; 2) that the client and the aide negotiate any changes in care arrangements directly with Employer; and 3) that the aide provide competent and caring service to the client.

Lastly, Employer determines the aide's rate of pay and the method of payment; collects its share of the hourly fee directly from the client based on the number of hours worked by the aide; sets the mileage charge payable when an aide uses his or her own vehicle to run errands for the client; and requires forty-eight hours notice for cancellations or changes in the client-aide agreement.

By Notice of Assessment dated February 15, 1991, the Bureau notified Employer of the assessment for unemployment compensation taxes due. After Employer filed a timely petition for reassessment with the Secretary of Labor and Industry (Secretary), a hearing was held before a hearing officer on May 26, 1993. The hearing officer recommended that the petition be denied, which recommendation was approved by the Secretary, through the Deputy Secretary for Administration, who issued a decision and order denying

Employer's petition for reassessment on August 20, 1993. This appeal followed.[1]

Employer raises three issues in its petition for review: 1) whether the aides are independent contractors and not employees for purposes of the unemployment compensation tax assessment; 2) whether the Department improperly excluded evidence regarding the nature of the services provided by the aides and the independent trade or occupation they were engaged in; and 3) whether the hearing officer was not sufficiently independent and objective thereby depriving Employer of a fair hearing. We will discuss these issues seriatim.

█ It is undisputed that services have been performed for wages and therefore, the burden is on Employer to bring itself within the exceptions to "employment" under Section 4(*l*)(2)(B) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 753(*l*)(2)(B). That section provides, in pertinent part, that:

> Services performed by an individual for wages should be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the department that—
> (a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and
> (b) as to such services such individual is customarily engaged in any independently established trade, occupation, profession, or business.

█ This Court has held that the employer bears the burden of proving both elements of Section 4(*l*)(2)(B). *Crenshaw v. Unemployment Compensation Board of Review,* 50 Pa.Commonwealth Ct. 136, 412 A.2d 682 (1980); *Kardon v. Unemployment Compensation Board of Review,* 40 Pa.Com-

---

1. Our scope of review is limited, by Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, to determining whether the necessary findings of fact are supported by substantial evidence, whether the Department committed an error of law, or whether the petitioner's constitutional rights were violated. *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986).

monwealth Ct. 20, 396 A.2d 487 (1979). Unless both of these elements are proven, then the presumption stands that one who performs services for wages is an employee and not an independent contractor. *Venango Newspapers v. Unemployment Compensation Board of Review,* 158 Pa.Commonwealth Ct. 379, 631 A.2d 1384 (1993); *Kardon.* With respect to the first element, we have held that the ability to control the business and not actual control, is determinative of whether one should be considered self-employed. *Zotis Enterprises, Inc. v. Department of Labor & Industry,* 160 Pa.Commonwealth Ct. 568, 635 A.2d 698 (1993); *Biter v. Department of Labor & Industry,* 39 Pa.Commonwealth Ct. 391, 395 A.2d 669 (1978). As for the second element, the employer needs to prove that the worker held him or herself out to or was capable of performing the particular activities in question for anyone who wished to avail themselves of such services. *Jochynek v. Unemployment Compensation Board of Review,* 32 Pa.Commonwealth Ct. 86, 378 A.2d 490 (1977).

■ Employer herein argues that the evidence it presented unequivocally established that the aides who participate in the registry service are independent contractors and not employees. First, Employer argues that the aides negotiate their own wages and hours with the client; second, the aides are free to work independently outside the registry service; third, the aides are not subject to direct supervision or control by Employer while participating in the registry service; and fourth, the client pays the aides directly their share for the services performed by the aides.

The Department contends that an examination of all of the elements of the relationship between Employer and the aides indicates that Employer retains both control and the ability to control the performance of services of the aides. Employer markets its services as a provider of home care services through news advertisements and referrals and maintains a registry of aides who are able to provide different types of home care services. Employer interviews all prospective aides and has called references to see that they have appropriate patient care skills. Employer requires its aides to com-

plete an employment application and sign a registry agreement, which explains that they are self-employed and are to pay their own taxes. The agreement also provides that "any alterations in terms and/or future working arrangements with any client assigned to me, shall be made only through Victor's Helping Hands." (Registration Agreement.)

Once chosen to meet with a client, the aide is required to sign a client-aide agreement prepared by Employer after Employer has interviewed the prospective client to ascertain the type of home care that is required. Employer stated that once it has contacted an aide to be matched up with a client, he "accompan[ies] the nursing assistant, or the aide, to the client's residence . . . [a]nd sit[s] down and discuss[es] [the job] with them." May 26, 1993 Hearing, N.T., p. 8. Employer indicated that when meeting with a client, the client is told that the rate of pay is on "a sliding scale between $7 and $9 usually, depending what type of skill's being requested for the home care . . . ." Employer also admitted that while its referral or registry fee is calculated on an hourly basis anywhere from $1.25 to $2.50 per hour, that the aide usually receives $6.00 per hour and it (Employer) receives the difference. Employer also testified that it provides time sheets to the aides to complete on a daily basis and in triplicate, with one copy each to the aide, the client and to Employer. Employer does not provide any other materials or equipment to the aide. Employer stated that the aides are free to refuse any assignment and that refusal does not remove them from the registry list. Finally, Employer sets the rate of reimbursement for gas mileage when an aide uses his or her own car to run errands for the client.

Moreover, Jean Noss, an aide listed on Employer's registry, testified that while Employer does not provide any direct supervision of her services, Employer has on occasion told her in detail how to perform certain services and while this is usually done at the initial interview with the client, it has occurred after she has already been placed with the client and that "[t]hey keep checking to see how things are." N.T., p. 40. Ms. Noss also stated that Employer has called her clients to

see if they are satisfied with her work and that she knows that if there are any problems with the arrangements, she is to contact Employer.

Wilma Worthington, who is also an aide listed on Employer's registry, stated that she is introduced to the client by Employer, that she calls Employer if there is a problem or if she cannot keep an appointment, and that Employer and the client set the rate of pay, but she does not discuss her hourly rate with the client.

We find that the Department's conclusion that Employer exercised sufficient control and direction over the duties of the aides as to constitute "employment" under the Law is amply supported by substantial evidence and therefore it is binding upon this Court. *Eckert v. Unemployment Compensation Board of Review,* 86 Pa.Commonwealth Ct. 72, 483 A.2d 1059 (1984).

Next, Employer argues that evidence with respect to the second prong of the test under Section 4(*l*)(2)(B) was "improperly excluded by the hearing officer." Employer's Brief, p. 22. However, from our thorough review of the entire record, we can discern no evidence that Employer was precluded from presenting evidence concerning the nature of the services provided by the aides or evidence concerning the independent trade in which the aides were engaged. In fact, Employer acknowledges that it was allowed to present the testimony of two aides, Ms. Noss and Ms. Worthington, that while listed on Employer's registry, they were also simultaneously employed by nursing homes as nurses' aides. As Employer asserts in its brief, this testimony "clearly meets the second element of Section 4(*l*)(2)(B)." *Id.* at 20.

However, the second prong of the test requires more than just a showing that the aide is free to engage in outside employment. The language of Section 4(*l*)(2)(B) requires that the worker, in this case, the aide, "is customarily engaged in an independently established trade, occupation, profession, or business." As this Court stated in *Venango:*

[t]wo important factors are to be considered in this evaluation; whether the individual was capable of performing the activities in question to anyone who wished to avail themselves of the services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services.

158 Pa.Commonwealth Ct. at 387, 631 A.2d at 1388. Here, the aides were not free to perform the home care services for anyone who wished to avail themselves of this service; in fact, the aides specifically agreed that they would "not work on ... [their] own, at any later date, for someone originally assigned to ... [them] by the Registry." (Registration Agreement.) Furthermore, the fact that the aides agreed to pay their own taxes is not in and of itself proof that the aide is an independent contractor and does not exempt Employer from the payment of unemployment compensation taxes. *Vaughn A. Hoey v. Department of Labor & Industry, Bureau of Employment Security,* 92 Pa.Commonwealth Ct. 462, 499 A.2d 1124 (1985). Therefore, we also conclude that Employer has failed to meet the second element under Section 4($l$)(2)(B) of the Law.

▪ Lastly, Employer asserts that because the hearing officer was a member of the Bureau which was the same government body who brought this action against it thereby presumably creating an appearance of bias, Employer has been denied due process under the Law. Our review of the record indicates that this argument was not raised before the Bureau in Employer's petition for reassessment, nor at the hearing before the hearing officer. Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a), requires that a party may not raise an issue on judicial appeal that has not been raised before the administrative agency. Although there are exceptions to this requirement, e.g., where the question raises the validity of the statute; where the question is one of jurisdiction; and where the question is one that could not have been raised with clear diligence, Pa.R.A.P. 1551, none are applicable in this matter. Therefore, the issue is deemed waived, and we need not consider it. *Hoey.*

Accordingly, because Employer failed to rebut the presumption that there was an employment relationship under Section 4($l$)(2)(B), we affirm the order and decision of the Deputy Secretary for Administration, of the Department of Labor and Industry.

## *ORDER*

AND NOW, this 18th day of August, 1994, the order of the Department of Labor and Industry, No. 7005, dated August 20, 1993, is affirmed.

NEWMAN, Judge, dissenting.

I respectfully dissent. Because I believe that the aides who participate in the registry service of William R. Victor, t/a Victor's Helping Hands (Victor), are independent contractors, and not employees of Victor, I would reverse the order of the Department of Labor and Industry, Bureau of Employer Tax Operations (Department), and grant Victor's petition for reassessment.

In affirming the order of the Department, the majority correctly states that the burden is on the alleged employer to bring itself within the exceptions to "employment" under Section 4(1)(2)(B) of the Unemployment Compensation Law (Law).[1] That section provides, in pertinent part, as follows:

Services performed by an individual for wages should be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the department that—

(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and

(b) as to such services such individual is customarily engaged in any independently established trade, occupation, profession, or business.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 753(1)(2)(B).

43 P.S. § 753(1)(2)(B). Whether a party is employed or self-employed under this section is a question of law subject to our review. *Attorneys on Call v. Unemployment Compensation Board of Review,* 155 Pa.Commonwealth Ct. 96, 624 A.2d 754 (1993).

I agree with the majority that unless the purported employer proves both elements of Section 4(1)(2)(B), the presumption stands that an individual who performs services for wages is an employee and not an independent contractor. *Venango Newspapers v. Unemployment Compensation Board of Review,* 158 Pa.Commonwealth Ct. 379, 631 A.2d 1384 (1993). I disagree with the majority, however, that Victor failed to meet this burden.

With respect to the first element, this court has held that one need not actually exercise control in order to be considered an employer; rather, the mere right or authority to exercise control or interfere with the work creates an employment relationship. *Crenshaw v. Unemployment Compensation Board of Review,* 50 Pa.Commonwealth Ct. 136, 412 A.2d 682 (1980). This court, in further defining this standard, has · held that the following factors should be examined when determining whether one is under the control of a purported employer: whether there was on-the-job training, whether tools were supplied, whether there were regular meetings to attend, whether there was a fixed rate of remuneration and whether taxes were deducted from the worker's pay. *Attorneys on Call.*

When applying these factors to the present appeal, I note that although Victor provides time sheets to the aides, Victor does not furnish any other materials or equipment to them. Direct day-to-day supervision by Victor of the aides' activities is also lacking.[2] After Victor refers an aide to a client, the client and the aide, not Victor, negotiate the job "particulars," such as hours, days and responsibilities. Victor does not play

---

2. On occasion, Victor instructs the aides on how to perform certain services. However, this instruction is usually done at the initial interview with the client.

any role in the aide's actual job performance once the client and the aide make contact.

I further note that the aides on Victor's registry negotiate their own wages with the client, and the client directly pays the aides their share of Victor's fee.[3] The aides also are free to refuse any assignment, and a refusal does not result in removal of their names from the registry list.

Last, pursuant to the terms of the registration agreement, the aides are self-employed and agree to pay their own taxes. I note that the majority, relying on *Hoey v. Department of Labor & Industry, Bureau of Employment Security,* 92 Pa.Commonwealth Ct. 462, 499 A.2d 1124 (1985), is correct that this fact alone is not in and of itself proof that the aides are independent contractors. However, this fact is not the only indication that the aides enjoyed independent contractor status.

Therefore, upon consideration of all of the above factors, I believe that there is ample support in the record for a conclusion that the aides are not under Victor's control. As such, I would hold that Victor satisfied the first element of Section 4(1)(2)(B) of the Law.

As to the second element of whether an individual is customarily engaged in an independently established profession, this court has stated:

> [i]n interpreting the meaning of 'customarily engaged' and 'independent business' important factors have been whether the individual held himself out or was capable of performing the particular activities in question for anyone who wished to avail himself of such services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services.

*Jochynek v. Unemployment Compensation Board of Review,* 32 Pa.Commonwealth Ct. 86, 90, 378 A.2d 490, 492 (1977).

**3.** Victor generally charges its clients a fee between $7 and $9 per hour, depending on the level of skill required. The client directly pays Victor its portion of the fee. While Victor's portion of the fee varies from $1.25 to $2.50 per hour, the aides usually receive an hourly wage of $6.00.

In concluding that Victor failed to satisfy the second prong, the majority unduly emphasizes the fact that by the terms of the registration agreement, the aides agreed that they would "not work on ... [their] own, at any later date, for someone originally assigned to ... [them] by the Registry." I do not believe, however, that the contract provision alone should be dispositive of this issue.

As professionals, the aides on Victor's registry hold. themselves out as capable of performing particular skills for anyone who wishes to avail himself or herself of such services, with the exception of Victor's clients. While the aides are prevented from seeking employment from Victor patients for whom they had previously provided care, the registration agreement does not prohibit the aides from seeking employment from other home health care providers in the industry. Accordingly, the nature of the home health care business does not compel the aides to look to a single employer for the continuation of such services. In fact, two of the aides testified that while listed on Victor's registry, they simultaneously worked for nursing homes as nurses' aides.

Moreover, I note that this case is readily distinguishable from *Jochynek*. In *Jochynek*, this court addressed the issue of whether the local registrar of vital statistics for the Department of Health was an employee or independent contractor for the purpose of determining her entitlement to unemployment compensation benefits after she was removed from office. In holding that the local registrar was an employee, and not an independent contractor, we relied upon, *inter alia*, the facts that she was not employed by anyone other than the Department while employed as the local registrar, and she could not perform her particular service (namely, the issuance of certificates), once she was removed from the position. Unlike the *Jochynek* claimant, the aides in the present case worked for other health care providers while listed on Victor's registry and are certainly capable of performing their particular services for providers other than Victor.

Upon consideration of the above factors, I believe that there is ample support in the record for a conclusion that the aides

were customarily engaged in an independently established profession. As such, I would hold that Victor satisfied the second element of Section 4(1)(2)(B) of the Law.

Because I believe that Victor has satisfied both prongs of Section 4(1)(2)(B), I would reverse the order of the Department and grant Victor's petition for reassessment.