**Peter B. KURBATOV, d/b/a PBK Construction, Petitioner**

v.

**DEPARTMENT OF LABOR AND INDUSTRY, OFFICE OF UNEMPLOYMENT COMPENSATION, TAX SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 15, 2011.

Decided July 7, 2011.

Publication Ordered Sept. 30, 2011.

Amy H. Marshall, State College, for appellant.

Christopher G. Giovanis, Assistant Counsel, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and BUTLER, Judge.

OPINION BY Judge SIMPSON.

In this appeal, Peter B. Kurbatov, d/b/a PBK Construction (PBK), asks whether the Department of Labor and Industry (Department) erred in denying its petition for reassessment (petition) of unemployment compensation taxes. The central issue is whether PBK's workers are employees (for whose services unemployment compensation taxes are due) or independent contractors (for whose services taxes are not due). The Department concluded the workers were employees, and it assessed unemployment compensation taxes against PBK. Upon review, we affirm.

In December 2009, the Office of Unemployment Tax Services assessed PBK $35,936.85 for unpaid contributions, inter-

est and penalties for the second, third and fourth quarters of 2005, 2006, 2007 and 2008. Notice of Assessment, R.R. 94a–95a.[1] PBK petitioned for reassessment on the ground that the workers for whom contributions were assessed were independent contractors and thus did not qualify as employees under Section 4(*l*)(2)(B) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 753(*l*)(2)(B). A hearing ensued before a hearing officer.

Two witnesses testified: the unemployment compensation tax agent (Agent) who audited PBK's records and Kurbatov. In addition, the hearing officer received into evidence a packet of documents submitted by PBK.

The Department subsequently issued a final decision holding the workers were PBK's employees. The Department made findings which may be summarized as follows.

Kurbatov is the sole proprietor of PBK, a business engaged in installation of exterior insulation for commercial properties. Dep't Op., Finding of Fact (F.F.) No. 2. Companies contract with PBK for construction projects. F.F. No. 4. PBK hires individuals to complete the work on projects. F.F. No. 5.; Notes of Testimony (N.T.), 5/14/11, at 35–36. The size of the project determines the number of workers PBK hires. *Id.* Some workers work on the full project. F.F. No. 6; N.T. at 31. Other workers work only on specific tasks for a portion of the project. F.F. No. 6, N.T. at 31.

PBK compensates each worker based on the square footage of insulation each worker installs. F.F. No. 7; N.T. at 33–34.

Each worker submits a verbal invoice to PBK for work performed. F.F. No. 8; N.T. at 33–34.

PBK does not provide individuals with protective gear, hand tools, or training. F.F. No. 10–11. However, "PBK provides the necessary equipment and materials to complete the work, such as building materials, tarps and heaters." F.F. No. 9.

PBK requires each worker to sign an independent contractor agreement (agreement) for each project, F.F. No. 12, during each of the years at issue. N.T. at 34–35. Some individuals worked on multiple projects and entered into multiple independent contractor agreements with PBK. Each agreement was a standard form contract, with blank lines for job-specific information such as work location, completion date, and rate of pay per square foot of work. Each agreement identified Pennsylvania law as governing the agreement. Each agreement covered work performed in Pennsylvania.

In accordance with each agreement, PBK determines the hours an individual works. F.F. No. 16. Important to our analysis is a term of the agreement which provides that "individuals may not leave the job site without permission from PBK." F.F. 15. Also of significance, individuals are not permitted to distribute their name or services for employment while working for PBK. F.F. No. 14.

Agent testified he conducted an audit because PBK was issuing 1099 forms to individuals who "did not have an account" with the Department. N.T. at 10. Internal Revenue Service Form 1099 documents payments by a business to an independent contractor. He also noted that PBK did

---

1. The Agent testified he did not perform assessments for the first quarter of each year because the work involved outside construction, and he presumed the workers would not perform outside work during that time of year. Notes of Testimony (N.T.), 5/14/11, at 16.

not have an account with the Department. N.T. at 21.

Agent also testified that PBK did not provide several types of documents the Department requested. From his audit and investigation, Agent concluded PBK made payments to a number of individuals for various services performed as employees. The Department issued its assessment to PBK for unemployment compensation taxes owed.

Kurbatov testified with the assistance of a translator. Kurbatov stated he treated each individual as an independent contractor. The workers signed agreements to document that relationship. The workers chose their own hours and could leave at anytime. He did not require the workers to have liability insurance until 2008, but he required each to have insurance thereafter. N.T. at 38–39. Kurbatov was confused during his meeting with Agent as to what the Department required from him.

Ultimately, the Department denied PBK's petition. The Department reasoned:

There is substantial evidence to find these individuals are employees. Although the individuals used their own hand tools, provided their own clothing and protective gear, PBK supplied the necessary equipment and materials to perform the job. *Despite Mr. Kurbatov's testimony that individuals could come and go as they please, the evidence did not support the statement. The Agreement provided that the individuals must receive permission from PBK to leave the worksite and set forth the hours an individual was requested to work.* The individuals' compensation

was not theirs to negotiate or determine. Provision 16 of the Agreement allows PBK to fine and/or terminate the individuals if the Agreement is violated.

Dep't Dec. at 7 (emphasis added). PBK appealed.[2]

PBK asserts it proved the workers were independent contractors. PBK argues the Department made factual errors by relying on the terms of the written agreements instead of Kurbatov's testimony.

■ Our consideration of these arguments requires us to apply Section 4(*l*)(2)(B) of the Law, which governs whether a worker is an employee or an independent contractor. Section 4(*l*)(2)(B) of the Law provides:

Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). The burden to overcome the "strong presumption" that a worker is an employee rests with the employer. *See Sharp Equip. Co. v. Unemployment Comp. Bd. of Review*, 808 A.2d 1019, 1024 (Pa.Cmwlth.2002).

■ To prevail, an employer must prove: (i) the worker performed his job free from the employer's control and direction, and (ii) the worker, operating as

---

**2.** The Court's review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether the Department committed an error of law, or whether the petitioner's constitutional rights

were violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Victor v. Dep't of Labor & Indus.*, 166 Pa.Cmwlth. 663, 647 A.2d 289 (1994).

an independent tradesman, professional or businessman, did or could perform the work for others, not just the employer. *Venango Newspapers v. Unemployment Comp. Bd. of Review*, 158 Pa.Cmwlth. 379, 631 A.2d 1384 (1993). "[T]his two-pronged test is conjunctive and both prongs must be satisfied in order for persons rendering services for wages to be considered independent contractors." *Electrolux Corp. v. Dep't of Labor & Indus., Bureau of Employer Tax Operations*, 705 A.2d 1357, 1360 (Pa.Cmwlth.1998).

■ As to the first element, a contract that on its face purports to establish an independent contractor relationship may not necessarily establish an independent contractor relationship. *See, e.g., Victor v. Dep't of Labor and Indust.*, 166 Pa. Cmwlth. 663, 647 A.2d 289, 291 (1994). Rather, findings regarding the actual working relationship between worker and employer determine whether this element is satisfied. Our Supreme Court instructs:

> While no hard and fast rule exists to determine whether a particular relationship is that of employer-employee or owner-independent contractor, certain guidelines have been established and certain factors are required to be taken into consideration:
> 'Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is part of the regular business of the employer, and also the right to terminate the employment at any time.'

*Hammermill Paper Co. v. Rust Eng'g Co.*, 430 Pa. 365, 370, 243 A.2d 389, 392 (1968) (citation omitted). "Because each case is fact specific, all of these factors need not be present to determine the type of relationship which exists." *York Newspaper Co. v. Unemployment Comp. Bd. of Review*, 160 Pa.Cmwlth. 475, 635 A.2d 251, 253 (1993).

■ Further, "[w]hile all of these factors are important indicators, the key element is whether the alleged employer has the *right* to control the work to be done and the manner in which it was performed. If the alleged employer has this right, an employer-employee relationship likely exists." *Id.* (emphasis in original). Thus, an employer-employee relationship likely exists not only where the employer actually exercises control, but also where it possesses the right to do so. *Victor.* Indeed, in *Biter v. Department of Labor & Industry*, 39 Pa.Cmwlth. 391, 395 A.2d 669, 670 (1978), this Court, speaking through Judge Glenn Mencer, stated: "It is well established that one need not [a]ctually exercise control in order to be considered an employer; rather, the mere right or authority to exercise control or interfere with the work creates an employment relationship."

■ As to the second element, two important factors are considered. We look to "whether the individual was capable of performing the activities in question for anyone who wished to avail themselves of the services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services." *Venango*, 631 A.2d at 1388.

■ A determination regarding the existence of an employer-employee relationship is a question of law that depends on the unique facts of each case. *Resource Staffing, Inc. v. Unemployment Comp. Bd. of Review*, 961 A.2d 261 (Pa.Cmwlth.2008). In *American Diversified Corp. v. Bureau of Employment Security, Department of*

*Labor & Industry,* 1 Pa.Cmwlth. 527, 275 A.2d 423, 426 (1971), this Court explained:

> The [UC Law] goes very far, and properly so, and places a very heavy burden on the applicant when it makes payment to anyone who has performed . . . services to excuse or exempt that payment from the unemployment compensation tax. Few indeed are the instances where that burden can be met. . . .

Application of these factors supports the Board's determination here. The Department concluded the agreement contained provisions that established PBK's control of the workers.

■ First, a worker may have an employee relationship with employer even if the worker uses some of his own equipment in conjunction with equipment and materials provided by an employer. *See Glatfelter Barber Shop v. Unemployment Comp. Bd. of Review,* 957 A.2d 786 (Pa. Cmwlth.) (barber who provided his own scissors and razors was an employee of a barbershop which provided other supplies and equipment), *appeal denied,* 599 Pa. 712, 962 A.2d 1198 (2008). Although the workers here were required to bring their own "hand tools, clothing and protective gear," PBK provided all the remaining materials and equipment. Paragraph 3 of the agreement provides that PBK:

> shall provide materials and lodging as necessary. The Company shall also provide scaffolding and other necessary equipment and materials including tarps and heaters. . . . The Company will reimburse the Sub–Contractor for the cost of kerosene, if any.

Agreement at ¶ 3. Similar to the situation in *Glatfelter,* the Department did not err in concluding this factor suggested an employment relationship.

Second, an employment relationship is suggested when an employer controls the worker's work hours. *Sharp.* Here, the agreement establishes a specific schedule that requires permission for deviation. Paragraph 11 of the agreement declares a work day of 8 a.m. to 5 p.m. Agreement at ¶ 11. A worker may work additional hours, but he may not work fewer hours "unless specifically authorized by PBK." *Id.* The agreement requires the worker to be on site at all times "unless otherwise directed." *Id.* Paragraph 7 prohibits a worker from leaving the job site "without consulting with PBK. . . ." Agreement at ¶ 7. Consistent with *Sharp,* the Board concluded the establishment of work hours was an indicator of employment.

PBK argues that consistent with *CE Credits OnLine v. Unemployment Compensation Board of Review,* 946 A.2d 1162 (Pa.Cmwlth.2008), an employer may establish expectations and parameters without establishing an employment relationship. PBK argues the restraints in Paragraphs 7 and 11 of the agreement are merely statements of expectations and parameters. The Department argues that *Sharp* is more analogous to circumstances in this case. We agree with the Department.

In *CE Credits,* this Court concluded an employer's exercise of control over a worker's final work product did not make the worker an employee. The case involved a worker hired to evaluate submissions for an online continuing education program. The employer provided a grading rubric and required the worker to provide grammatically correct responses within 24 hours of receiving the assignment. The worker was able to make her own hours, and she used her own equipment.

The Court noted the difference between "control of a work product and control over the time, place and manner of performance." *Id.* at 1169. The Court explained that controlling the result of the

work, and not the means, did not make a worker an employee. *Id.* (quoting *J. Miller Co. v. Mixter*, 2 Pa.Cmwlth. 229, 277 A.2d 867 (1971)). The Court balanced the various factors and concluded that, while employer had control over the worker's "final work product, *i.e.*, demanding that it be free of grammatical and syntaxical error" the worker was an independent contractor because she "decided when to work, whether to work, provided the tools necessary to do the job, received no formal training, attended no meetings and did not have taxes withheld from her compensation." *Id.* at 1164, 1170.

Here, the workers' schedules were far more regimented than those in *CE Credits.* As in *Sharp,* Employer dictated the time, place and manner for performance, and required permission to deviate from those schedules.[3]

In light of the language of the agreements, the Department's conclusion that PBK exercised sufficient control over the workers to constitute "employment" is supported by substantial evidence; therefore, it is binding on this Court. *Victor.*

■ PBK argues the Department erred in placing greater weight on documentary evidence than on Kurbatov's testimony. However, the terms of agreement between the parties should be considered. *Hammermill Paper Co. v. Rust Eng'g Co.*, 430 Pa. 365, 243 A.2d 389 (1968); *Beacon Flag Car Co., Inc. (Doris Weyant) v. Unemployment Comp. Bd. of Review,* 910 A.2d 103 (Pa.Cmwlth.2006).

■ Moreover, this Court may not revisit the evidence to make our own findings. *Taylor v. Unemployment Comp. Bd. of Review,* 474 Pa. 351, 378 A.2d 829 (1977). Where there was a conflict between documentary evidence and Kurbatov's testimony, the Department found the documentary evidence more compelling. The Department was free to weigh evidence and resolve such conflicts. *Id.* We discern no error in the Department's doing so.

For these reasons, we conclude the PBK failed to meet its burden of establishing the first prong. Because PBK needed to establish both prongs, we need not fully discuss the second prong. It is sufficient for current purposes to note our conclusion that the Department did not err in its determination, especially considering the written limitation on a worker distributing his name or service for employment during a PBK project.

Given the presumption that a worker is an employee, and given substantial evidence supporting a determination of control, the Board did not err in finding the workers were employees. Accordingly, we affirm the Board's denial of PBK's request for a reassessment.

### ORDER

**AND NOW,** this 7th day of July, 2011, the order of the Department of Labor and Industry in the above captioned matter is hereby **AFFIRMED.**

---

**3.** Department also argues that PBK controls the workers through the payment arrangement. PBK receives payment for services from the developer. Kurbatov takes a portion and then divides the remainder among the workers on a square footage basis. The workers were not in a position to negotiate their compensation; rather, their compensation was a function of the number of workers PBK brought to work on each project. This argument is persuasive.