**OSBORNE ASSOCIATES, INC.,
d/b/a Generations Salon
Services, Petitioner**

**v.**

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 26, 2011.
Decided Jan. 10, 2012.

Thomas A. Schneider, West Conshohocken, for petitioner.

Arthur Selikoff, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge,[1] and LEAVITT, Judge, and BUTLER, Judge.[2]

OPINION BY Judge LEAVITT.

Osborne Associates, Inc., d/b/a Generations Salon Services (Generations) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) holding, on remand, that Barbara P. Levicke (Claimant) was an employee of Generations and, thus, eligible for unemployment compensation benefits.[3] Generations contends that the Board erred in holding that Claimant, who worked as a substitute cosmetologist on eight occasions over the course of 2008, was its employee rather than an independent contractor. Generations argues that the factors developed by case law precedent to determine whether an individual is in an employer-employee relationship leads to the inescapable conclusion that Claimant worked as an independent contractor for Generations. Thus, the Board erred in holding that for purposes of Section 402(h) of the Unemployment Compensation Law[4] Claimant

---

1. The decision in this case was reached prior to January 7, 2012, when Judge Pellegrini became President Judge.

2. This case was decided before Judge Butler's term ended on January 2, 2012.

3. This case first came before us in *Osborne Associates, Inc. v. Unemployment Compensa-* *tion Board of Review,* 3 A.3d 722 (Pa.Cmwlth. 2010) (*Osborne I* ).

4. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(h). Section 402(h) of the Law provides that an individual is ineligible to receive benefits for any week "[i]n which he is engaged in self-employment." 43 P.S. 802(h).

was an employee of Generations. We agree and, for the reasons that follow, reverse the Board.

## Background

Claimant is a licensed cosmetologist employed by "LA Hair." Reproduced Record at 40a (R.R. ——). In November 2007, LA Hair reduced Claimant's hours, and the UC Service Center awarded her partial unemployment benefits. While collecting benefits, Claimant reported her earnings from LA Hair as well as the $986 she earned working as a substitute for Generations on eight separate occasions between July and November of 2008.

Claimant's reported income prompted the UC Service Center to investigate whether Claimant was self-employed. It concluded on December 18, 2008, that Claimant was an employee of Generations and not an independent contractor. Generations appealed this determination, and a hearing was held before a Referee.

At the hearing, Claimant appeared, *pro se*, but Generations did not appear. The owner and president of Generations, Marvin Weinstein, had requested the opportunity to testify by telephone because he was in Florida, but the Referee denied the request as untimely because it was received two days before the hearing.

Claimant, the sole witness, testified that in 1997 she worked for Generations as an independent contractor under a written agreement. Under that agreement, Claimant provided hairstyling services to residents at a specific nursing home that had contracted with Generations for these services. In August 2008, without entering into a new written agreement, Generations again engaged Claimant to provide services to residents at different senior living facilities that had contracted with Generations. Claimant filled in when one of Generations' regular cosmetologists was unable to work because of sickness or vacation.

Claimant testified that she provided certain tools, such as brushes, scissors, a hair dryer and a curling iron, for her work. She stated that Generations provided the perm solutions, dyes, peroxide, creams, rollers, clips, capes and shampoo, as well as facial cleaning products and cotton balls.

Claimant also testified that she was compensated on a commission basis and received an IRS Form 1099 from Generations. This required her to pay the income taxes on these earnings. Claimant did not find this a problem because 98% of her income taxes were deducted from the compensation she received from LA Hair.

The Referee determined that Claimant was an employee of Generations. Generations appealed, and the Board remanded. It designated the Referee to serve as its hearing officer to determine whether Generations had cause for its nonappearance at the prior hearing and, if so, to take additional evidence on the merits.

At the remand hearing, Weinstein testified and explained why his request to testify by telephone was made two days before the hearing. The Board accepted his explanation and proceeded to the merits.

Weinstein testified about the nature of Claimant's work for Generations. He explained that Generations provides hairstyling services to residents of senior living facilities. He confirmed Claimant's testimony that she worked as a substitute and was paid by commission. He elaborated on this latter point, noting that Claimant's commission was different on each of the eight days she worked, depending on what Claimant worked out with Anita Fantic, Generations' manager. The charge for each hairstyling service was established by the senior living facility. Claimant sent

Generations an invoice for the services she provided residents. Weinstein stated that Claimant was free to leave the facility without seeing all the residents scheduled for services; however, he acknowledged that such conduct would likely end her substitute engagements by Generations. Weinstein testified that Claimant was free to contract with other salons in competition with Generations.

Weinstein testified that Claimant provided her own scissors, the most critical tool, and that items such as shampoo were provided by Generations or by the cosmetologist she replaced. Generations did not supervise Claimant's work, and no one checked on the hairstyling work she did for residents. Generations did not instruct Claimant on how to do hairstyling; provide her any training; or require her to attend meetings.

Claimant testified briefly at the remand hearing. She explained that an unnamed individual at the Board of Cosmetology informed her that cosmetologists cannot be independent contractors. Claimant stated that Fantic called her when she needed a substitute, and her commission changed according to Fantic's level of desperation.

The Board held that Claimant was an employee, not an independent contractor, reasoning that the Beauty Culture Law,[5] commonly referred to as the Cosmetology Law, and its implementing regulation required Claimant to be in an employment relationship with Generations.

Generations appealed to this Court. It argued that the Board erred in relying exclusively on the cosmetology regulatory scheme to find that Claimant was an employee. Generations argued that the Board should have applied the factors developed in our case law precedent for determining whether a claimant is in an employment relationship. We agreed and ordered a remand. *Osborne I*, 3 A.3d at 733. We explained that the Board could consider the regulatory requirements for providing services outside a salon along with the factors developed in the case law in evaluating whether Claimant was in an employment relationship.

On remand, the Board has again concluded that Claimant was an employee of Generations. The Board held that the services Claimant provided to residents were those customarily done in an independent trade or profession. However, it found that Generations controlled Claimant's work and, thus, she was its employee.

In so holding, the Board made findings that suggested an employment relationship. It found that Generations set Claimant's compensation; determined her work day and hours; provided Claimant supplies; and looked to Claimant to keep service records. The Board also made findings that suggested that Claimant was an independent contractor. It found that Claimant was free to work for others; was given an IRS Form 1099; could refuse a particular substitution assignment; and used her own scissors and other tools. In the end, however, the Board concluded that Claimant was not free from Generations' direction and control and, thus, an employee of Generations.

### Petition for Review

■ Generations has petitioned for this Court's review and raises four issues for our consideration.[6] First, Generations ar-

---

5. Act of May 3, 1933, P.L. 242, *as amended,* 63 P.S. §§ 507–517.1.

6. Our scope of review is limited to determining whether constitutional rights were violat-

ed, an error of law committed or whether the findings of fact are supported by substantial evidence of record. *Western and Southern Life Insurance Co. v. Unemployment Compen-*

gues that the record supports one legal conclusion: that Claimant was free from direction and control by Generations in her work as a substitute hairstylist. Second, Generations argues that the Board capriciously disregarded the evidence that Generations in no way supervised Claimant's work as a hairstylist; it was not even present. Third, the Board erred in basing its legal conclusion on cosmetology regulations instead of the evidence of record. Fourth, the Board erred in establishing a *per se* rule that cosmetologists can never be independent contractors. Essentially, Generations contends that the Board's analysis distorted the evidence, thereby reaching the wrong conclusion.

### Employment Relationship

■ Unemployment compensation is available to *employees* who lose their jobs. It is not available to self-employed persons whose business undergoes a decline in success.

The legislature has established a two-pronged test for determining whether a claimant is in an employment relationship. Section 4(*l*)(2)(B) of the Law defines "employment" as follows:

> Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the department that—(a) such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact; and (b) as to such services such individual is customarily engaged in an independently established trade, occupation, profession or business.

43 P.S. § 753(*l*)(2)(B). This provision has been construed to mean that a person paid a wage is presumed to be "an employee, as opposed to an independent contractor." *Osborne I*, at 728. However, the putative employer may overcome this presumption by showing "that the claimant: (1) 'was free from control and direction in the performance of his service'; and (2) 'as to such service, was customarily engaged in an independent trade or business.'" *Id.* (citation omitted).

In this case, the Board has conceded that the services Claimant provided were those customarily done by a self-employed professional, *i.e.*, a licensed cosmetologist. However, it held that Claimant was not free of Generations' "control and direction in the performance" of her cosmetology services and, thus, in an employment relationship with Generations.

### Generations' Control over Claimant

In Employer's first issue, it contends that the Board's conclusory findings strained the evidence. Generations argues that *Resource Staffing, Inc. v. Unemployment Compensation Board of Review*, 995 A.2d 887 (Pa.Cmwlth.2010) compels the conclusion that it did not control Claimant's work and, thus, she was an independent contractor, not an employee.

In *Resource Staffing* the claimant, an engineer, contracted with RSI, an information technology consulting agency, to provide services to a client of RSI. Upon completion of the project, the claimant applied for unemployment benefits, and they were granted. RSI then petitioned this Court for review, and we remanded. We held that the Board's analysis of the control issue had been flawed because it failed to resolve whether the claimant's work was supervised by RSI or by RSI's client. After remand, the Board again found the claimant to be an employee of RSI. It

based this conclusion on the facts that the claimant worked scheduled hours; had to notify RSI when he took sick or vacation leave; had to attend meetings; and had to submit timesheets.

On appeal of the remand adjudication, RSI asserted that the Board's findings were not consistent with the record. The claimant acknowledged that the client, not RSI, assigned him the work and supervised his performance. Further, the claimant's contract stated that he, not RSI, controlled the means and manner of his work. The Board disregarded those facts and focused, instead, on the fact that the claimant worked a 40–hour week at a specific location; had to report sick and vacation time to RSI; and was required to attend meetings with RSI to discuss the progress of his work. This Court concluded "that the Board's analysis distorts the evidence." *Resource Staffing*, 995 A.2d at 891. We found the degree of "control" to be the "minimal amount of control necessary to ensure the quality of services provided to the client." *Id.* at 892. We reversed the Board, holding that RSI did not control the claimant's work or manner of performance.

Generations argues that once again the Board has distorted the evidence to reach the desired result. It notes that, in several respects, the record here shows less control than that exercised by the putative employer in *Resource Staffing*. For example, the claimant in *Resource Staffing* signed a non-compete agreement; worked in one location; worked regular hours; and worked there for ten months. By contrast, Claimant was free to work for competing salons and did so; worked jobs at different senior living facilities; did not work a fixed schedule; and worked on only eight occasions. Further, Claimant did not have to attend meetings; report on her "progress;" or report sick or vacation

leave. She worked on random days, depending on whether an absence had been created by one of Generations' regular employees.

■ In determining whether a putative employer has the requisite control, courts consider factors such as:

whether there was a fixed rate of remuneration; whether taxes were withheld from the claimant's pay; whether the employer supplied the tools necessary to carry out the services; whether the employer provided on-the-job training; whether the employer set the time and location for work; whether the employer had the right to monitor the claimant's work and review performance; and whether the employer held regular meetings that the claimant was expected to attend.

*Id.* at 890, n. 6 (citing *CE Credits OnLine v. Unemployment Compensation Board of Review*, 946 A.2d 1162, 1168 (Pa.Cmwlth. 2008)). Because "each case is fact specific, all of these factors need not be present to determine the type of relationship which exists," and no single factor is dispositive of the ultimate question of whether the putative employer controls the work to be done and the manner in which it is done. *York Newspaper Co. v. Unemployment Compensation Board of Review*, 160 Pa. Cmwlth. 475, 635 A.2d 251, 253 (1993). If the alleged employer has the "right to control the work to be done and the manner in which it was performed," this suggests an employer-employee relationship. *Kurbatov v. Department of Labor and Industry, Office of Unemployment Compensation, Tax Services*, 29 A.3d 66, 70 (Pa. Cmwlth.2011) (quotation omitted).

■ Critically, however, there is a difference between control of a work product and control over the time, place, and manner of performance. The former suggests an independent contractor relationship,

and the latter suggests an employment relationship. *Id.* at 1169. As we explained in *CE Credits OnLine:*

"Control of the result only and not of the means of accomplishment" [does] not transform an independent contractor relationship into an employer-employee relationship. Every job, whether performed by an employee or by an independent contractor, has parameters and expectations. "Control" for purposes of Section 4(*l*)(2)(B) of the Law is not a matter of approving or directing the final work product so much as it is a matter of controlling the means of its accomplishment.

*Id.* (citation omitted).

■ In the case *sub judice,* the Board made several findings on the relevant factors that suggested Claimant was an independent contractor. For example, Claimant was paid a commission, not a fixed wage; was issued an IRS Form 1099; had no withholding done for Social Security, Medicare, unemployment or state or federal income taxes, as was her situation with LA Hair; received no training; had no day-to-day or on-the-job supervision; and attended no meetings.

The Board also made findings that suggested that Claimant was an employee. However, a close inspection shows that these latter findings mischaracterize what is uncontradicted evidence. In other words, as in *Resource Staffing,* the Board's analysis "distorts the evidence." *Resource Staffing,* 995 A.2d at 891.

For example, the Board concluded that Generations fixed Claimant's compensation because the senior living facility set the schedule of charges for the cosmetologist's services. The two are not logically con-

nected. The amount paid by the resident for hairstyling was shared by Generations and Claimant, and presumably by the senior living facility. Claimant's share, or commission, varied. By Claimant's own admission, her commission varied depending upon how desperate Fantic was to find a substitute; it ranged between 60 and 70 percent of what Generations was paid. At most, the hairstyling charge set by the senior living facility set a floor to and a cap on Claimant's commission.

The Board found that Claimant provided the tools necessary to perform her services even though the evidence on this point showed that both parties provided the "tools." Claimant testified that she provided the hardware, such as scissors, brushes, curling iron and hair dryer, and that Generations provided the expendable supplies, such as shampoo, perm solution and dyes. If one party supplies the vacuum cleaner, and the other supplies the fresh vacuum bags, the tool question is not clearly resolved. Because the evidence established that both Generations and Claimant provided the "tools," the evidence on this factor was not conclusive.

The Board found that Generations set the time and location for work. Again this distorts the evidence.[7] It was chance, *i.e.,* a one-day vacancy in Generations' work force, that determined where and how long Claimant worked. Generations did not know, in advance, how many hours would be involved in an assignment; it depended on how many residents requested services. The hours on any day could be long or short. Weinstein explained that if Claimant left a facility before all residents were seen, she would not be called back for substituting. The Board argues that Weinstein's ability to punish Claimant in

---

**7.** The Board overlooked our holding in *Venango Newspapers v. Unemployment Compensation Board of Review,* 158 Pa.Cmwlth. 379, 631 A.2d 1384, 1388 (1993), that newspaper carriers are independent contractors even though their hours are set by the newspaper.

this fashion showed that Generations had control over Claimant's work.[8]

The Board is wrong. First, hiring a person for a particular job, such as doing hairstyling on one day, suggests the absence of an employment relationship. *See, e.g., Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 370, 243 A.2d 389, 392 (1968) (compensating a worker by the job, as opposed to by the hour, suggests that the worker has been employed as an independent contractor). The substitute cosmetologist does not know whether there will ever be another job assignment. Second, as explained in *CE Credits,* 946 A.2d at 1169, expecting a quality product or level of performance is not unique to the employer-employee relationship. Weinstein's statement that he would not make future assignments to a substitute who left residents unserved expresses only an interest in ensuring quality performance by his sub-contractor. *See Resource Staffing,* 995 A.2d at 892.

In sum, the Board's conclusory findings that Generations fixed Claimant's pay, scheduled her day and supplied the tools she needed in her job do not withstand close scrutiny. The evidence in the record showed that both parties shared control over these aspects of Claimant's job as a substitute hairstylist and, thus, they are not dispositive of the control issue.

### Cosmetology Regulation

The Board found, as fact, that the tools were supplied by Generations because it believed that this was Generations' responsibility under 49 Pa.Code § 7.83.[9] It also found that Claimant kept records for Generations, which Generations was required to do by 49 Pa.Code § 7.82.[10] Generations argues that these regulations do not set up a *per se* requirement that substitute cosmetologists have to be employees, but if they do, they violate Section 8(b) of the Cosmetology Law,[11] which allows licensed

8. On this point, the Board relied on *Kurbatov,* 29 A.3d 66, where we considered a putative employer's argument that it did not owe unemployment compensation tax because its workers were independent contractors. We affirmed the Department's conclusion that the workers were employees, noting, among other things, that the company set the work hours, work location, rate of pay and were not permitted to distribute their name or services to others while working for the company. Notably, workers could not leave the job site without permission.

The Board herein seizes on the single fact that the workers could not leave the worksite without permission to argue that Generations had control over Claimant. This distorts the meaning of *Kurbatov,* where many factors showed that the employer controlled the manner of work.

Here, by contrast, Claimant controlled the manner in which she performed her services without interference from Generations.

9. It states:

A salon through which appointments are made for the rendering of cosmetology or limited license services outside the salon

shall be *responsible for ensuring that the licensees are fully supplied* and equipped when they perform services outside the salon and that all other requirements of this chapter are complied with.

49 Pa.Code § 7.83 (emphasis added). Generations contends that this regulation does not apply when a licensed cosmetologist provides services in a client's residence, in accordance with Section 8(b) of the Cosmetology Law, 63 P.S. § 514 (see n. 9, *infra* ).

10. It states:

A licensee who renders licensed services outside the salon shall maintain at the employing salon complete records for each service rendered outside the salon, including the date, time, place and fee charged. The record of outside services shall be considered part of the records of the salon.

49 Pa.Code § 7.82.

11. Section 8 of the Cosmetology Law provides as follows:

(a) Except as set forth in subsection (b) it shall be unlawful for any person:

(1) to practice cosmetology for pay in any place other than a licensed cosmetology

cosmetologists to provide services within a person's residence. We reject the Board's use of the cosmetology regulations in its analysis of the control issue.

First, even if Generations was required by 49 Pa.Code § 7.83 to provide all supplies used by Claimant, it did not do so. Claimant provided her own scissors, hair dryer and curling iron. In any case, the regulation imposed a duty on Generations, not on Claimant, to be responsible for supplies. The Board assumes that the cosmetology regulation applies where, as here, the cosmetologist does work in the residence of the client. However, this point has never been established by the State Board of Cosmetology, the agency that adopted the regulation. In any case, providing "tools" is only one factor in the multi-factor test.

Second, Claimant did not keep records for Generations; she issued invoices to Generations so that she could get paid. That these invoices may have also been used by Generations for the purpose of complying with 49 Pa.Code § 7.82 is of no moment. Independent contractors issue invoices in order to be paid for their work. By contrast, employees do not commonly submit invoices to their employers for their weekly wage.

The Board's logic is difficult to follow. It reasons, apparently, that if Generations had a regulatory duty that was fulfilled by

Claimant, then Claimant must be its employee. It fails to appreciate that Generations, or any salon, may sub-contract with others to carry out its regulatory obligations.[12]

Third, the Board failed to follow our instructions in *Osborne I*. There, we declined to construe the Cosmetology Law and regulations "as prohibiting all independent contractor relationships within the field of cosmetology." 3 A.3d at 730. The regulatory provisions relied upon by the Board in *Osborne I* were found *not* to require a cosmetologist to work under another's direct supervision. We explained that the cosmetology regulations were a factor to consider, but not a dispositive factor. It is undisputed that Generations did not actually supervise the manner in which Claimant styled hair; it did not even appear at the senior facility on any of the eight days she substituted. It did not need to interfere with Claimant's work because the Cosmetology Law expressly provides that "a licensed cosmetologist ... may furnish treatments to persons in their residences by appointment." 63 P.S. § 514.

As we explained in *Osborne I*, this case is unlike *Glen Mills Schools v. Unemployment Compensation Board of Review*, 665 A.2d 561 (Pa.Cmwlth.1995), wherein we concluded that a dental hygienist was pre-

salon or barber shop as defined in the act of June 19, 1931 (P.L. 589, No. 202), referred to as the Barbers' License Law; or

(2) to practice esthetics, nail technology or natural hair braiding for pay in any place other than a licensed cosmetology salon or a salon limited to esthetics, nail technology or natural hair braiding.

(b) *A licensed cosmetologist or the holder of a limited license may furnish treatments to persons in their residences by appointment.*

63 P.S. § 514 (emphasis added).

12. Generations challenges the Board's argument that the cosmetology regulations required Claimant to keep records of her work and make the employing salon responsible for her performance. 49 Pa.Code §§ 7.82, 7.83. Generations argues that if this is what the regulations require, then they conflict with Section 8(b) of the Cosmetology Law which authorizes a "licensed cosmetologist [to] furnish treatments to persons in their residences by appointment." 63 P.S. § 514. This is a legal argument to be resolved by the Cosmetology Board, in the appropriate case.

cluded, as a matter of law, from being self-employed. Our determination was based on Section 2 of the Dental Law,[13] which expressly requires that a dental hygienist work "under the supervision of a licensed dentist." 63 P.S. § 121. Further, this Court upheld the license revocation of a hygienist who worked independent of a supervisory dentist. *See Edwards v. State Dental Council and Examining Board,* 71 Pa.Cmwlth. 139, 454 A.2d 218 (1983).

■ By contrast, the Cosmetology Law does not expressly prohibit cosmetologists from working in independent relationships. Further, the scope of the Cosmetology Law and implementing regulations has yet to be addressed by the Cosmetology Board. The Board lacks authority to rule on the meaning of statutory and regulatory provisions on which no guidance has been given by the courts. For this reason, in *Osborne I,* this Court instructed the Board to apply the multi-factor analysis developed to determine whether a claimant is in an employer-employee relationship.[14] Here, the Board effectively made the cosmetology regulations dispositive, rather than a factor, contrary to our instructions in *Osborne I.*

### Conclusion

We hold that the record evidence supports the conclusion that Claimant worked for Generations as an independent contractor.[15] One factor, *i.e.,* which party provides the tools, may favor a finding that

Generations exercised the control suggestive of an employer-employee relationship because it provided most of the supplies. It may be that Claimant would have preferred to use other shampoo products. That single factor, however, has minimal, not dispositive, significance, and no single factor is ever dispositive. *CE Credits On-Line,* 946 A.2d at 1168–69. In *toto,* the evidence shows that Generations did not control, or interfere with, the manner of Claimant's performance of cosmetology services as a substitute.

Accordingly, the order of the Board is reversed.[16]

### ORDER

AND NOW, this 10th day of January, 2012, the order of the Unemployment Compensation Board of Review dated January 11, 2011, in the above-captioned matter is hereby REVERSED.

**13.** Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. § 120– § 130dd.

**14.** In doing so, we noted our precedent in *Glatfelter Barber Shop v. Unemployment Compensation Board of Review,* 957 A.2d 786 (Pa. Cmwlth.2008), wherein the Barber License Law's supervision requirement was one of many factors to be considered in determining whether an individual barber was an employee.

**15.** This conclusion does not mean that Claimant is not an employee of LA Hair. There is no record on that point, and LA Hair does not assert otherwise. There is no reason why one cannot be an employee in one work relationship and an independent contractor in another.

**16.** Given our disposition, we need not consider the remaining issues.